DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE v
GAVIN

DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE v
STANDFEST

Docket Nos. 62043, 64862. Argued April 7, 1981 (Calendar Nos. 1, 2).
—Decided December 23, 1982.

The Detroit Automobile Inter-Insurance Exchange brought sepa-
rate unrelated actions in the Wayne Circuit Court against
Nancy M. Gavin and Kathleen Standfest, seeking to vacate
arbitration awards which permitted recovery in excess of the
liability limits for uninsured motorist coverage under policies
of automobile insurance by stacking the coverage limits of
other policies, despite express anti-stacking provisions of all the
policies. The circuit court, Robert L. Shipper, J., confirmed the
award in *Gavin*. The Court of Appeals, D. C. Riley, P.J., and
M. F. Cavanagh and Hensick, JJ., affirmed in an unpublished
opinion per curiam on the grounds that once substantive arbi-
trability is determined judicial review effectively ceases and that
DAIIE's motion to vacate the award was not timely filed
(Docket No. 77-4254). The circuit court, Charles Kaufman, J.,
confirmed the award in *Standfest*. The Court of Appeals, D. C.
Riley, P.J., and R. B. Burns and D. E. Holbrook, Jr., JJ., af-
firmed in an opinion per curiam on the ground that the
arbitrators' decision to allow stacking was supported by case
law when made and was not reviewable (Docket No. 78-3545).
The plaintiff appeals.

In an opinion by Justice Ryan, joined by Chief Justice Fitz-

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 5 Am Jur 2d, Arbitration and Award §§ 167, 168.
[4] 5 Am Jur 2d, Arbitration and Award § 171.
[5, 6] 5 Am Jur 2d, Arbitration and Award §§ 184, 185.
[7] 5 Am Jur 2d, Arbitration and Award § 14.
    7 Am Jur 2d, Automobile Insurance § 293.
    What issues are arbitrable under arbitration provision of uninsured
    motorist provisions. 65 ALR3d 851.
    Validity and enforceability of provision for binding arbitration, and
    waiver thereof. 24 ALR3d 1325.

gerald and Justices Williams and Coleman, the Supreme Court
*held:*

The arbitrators in both cases, by disregarding the anti-stack-
ing provisions of the "other insurance" clauses of the contracts
from which they derived their powers in part, exceeded their
powers and committed errors of law so substantial that but for
such errors the awards would have been substantially different.
The judgments are set aside in each case, and each award is
reduced to the maximum amount available under one policy.

1. The contracts in these cases provided for settlement of
disputes between the insurer and the insured by arbitration
and for entry of judgment upon any arbitration awards. By
agreeing to submit arbitration results to a court for validation
or rejection, the parties brought the arbitration under the
provisions of the Revised Judicature Act. The arbitrators were
not free to ignore controlling principles of law in making their
determinations with the expectation that their awards would
be confirmed by the court on the ground that the parties had
waived objection to mere errors of law. Under the act, the court
retains all its equitable powers over arbitration proceedings.
Where an award is based on an error of law which is so
material or substantial as to have governed the award and but
for which the award would have been substantially different,
the court may vacate the award on the ground that the
arbitrators exceeded their powers.

2. Statutory arbitration is a proceeding in which an arbitra-
tion award is presented to the circuit court for validation or
rejection. Arbitrators derive their authority from the contract
in issue and are bound to act within its terms. However, they
are also bound by principles of law which govern the issues in
dispute. Both equitable principles and the express terms of the
contract play a central role in determining the finality of an
arbitration award. In these cases, the validity of the express
terms of the contracts was an essentially legal question. The
arbitrators erred in failing to enforce the express anti-stacking
provisions of the contracts. But for this error, the awards would
have been substantially different.

3. The court rule that an application to vacate an arbitration
award must be made within 20 days after delivery of a copy of
the award to the applicant does not define the jurisdiction of
the circuit court, but delineates a litigant's right to challenge
an award. The court may permit a party to plead beyond the
time limit. In *Gavin,* the plaintiff's delay in applying was
minimal, and no prejudice to the defendant was shown.

Justice Levin, joined by Justice Kavanagh, concurred on the

ground that the nature of the uninsured motorist clause is such that the courts, not arbitrators, should determine its meaning. It appears in millions of policies and affects the entire population of the state. It is not an ordinary commercial arbitration clause affecting only the contracting parties. No policyholder is free to contract for a different means of resolving disputes over the meaning of the clause. When a system of arbitration is created affecting almost everyone in the state in much the same way as the system of courts affects everyone in the state, absent some other method for providing order, harmony, and a rule of law for that system, the courts can properly intervene to provide order, harmony, and rule in lieu of disparate judgments of different arbitrators. Recognizing the need for a common rule and common construction of policy language in uninsured motorist cases does not require, nor should it be the basis for, creating a sweeping new doctrine concerning arbitration generally, however. The Court need go no further than to recognize that the arbitration clause of uninsured motorist insurance is different.

Reversed and remanded.

96 Mich App 71; 292 NW2d 164 (1980) reversed.

OPINION OF THE COURT

1. ARBITRATION — AUTOMOBILE INSURANCE — VACATION OF AWARDS.

The circuit court, upon application of a party to statutory arbitration to confirm or vacate an automobile insurance arbitration award, may set aside the award where on its face it appears that the arbitrators made an error of law so substantial that but for the error the award would have been substantially different; in such a case the arbitrators exceeded their powers (MCL 600.5001 *et seq.;* MSA 27A.5001 *et seq.,* GCR 1963, 769.9[1]).

2. ARBITRATION — AUTOMOBILE INSURANCE — VACATION OF AWARDS.

An arbitration award which ignored express anti-stacking provisions in an automobile insurance policy involved an error of law so substantial that but for the error the award would have been substantially different, enabling the circuit court to set aside the award on the ground that the arbitrators exceeded their powers (MCL 600.5001 *et seq.;* MSA 27A.5001 *et seq.,* GCR 1963, 769.9[1]).

3. ARBITRATION — AUTOMOBILE INSURANCE — STATUTORY ARBITRATION.

A clause in an automobile insurance policy which provides for

arbitration of disputes and the presentation of an arbitration award to the circuit court for enforcement renders the arbitration statutory, governed by the provisions of the Revised Judicature Act and the General Court Rules (MCL 600.5001, subds [1] and [2], 600.5021; MSA 27A.5001, subds [1] and [2], 27A.5021, GCR 1963, 769).

4. ARBITRATION — STATUTORY ARBITRATION — POWERS OF ARBITRATORS.

Arbitrators involved in statutory arbitration derive their powers from the contract providing for arbitration and are bound to act within its terms; they are also bound by the principles of law which govern the issues in dispute, and they exceed their powers when they act beyond the material terms of the contract or in contravention of the controlling principles of law.

5. ARBITRATION — STATUTORY ARBITRATION — EQUITY.

The circuit court retains all its equitable powers in proceedings to enforce arbitration awards (MCL 600.5035; MSA 27A.5035).

6. ARBITRATION — VACATION OF AWARDS — COURT RULES.

The court rule that an application to vacate an arbitration award be made within 20 days after the delivery of a copy of the award to the applicant delineates the applicant's right to challenge the award, not the jurisdiction of the circuit court (GCR 1963, 769.10[1]).

CONCURRING OPINION BY LEVIN, J.

7. ARBITRATION — AUTOMOBILE INSURANCE — UNINSURED MOTORIST PROVISION — CONSTRUCTION.

*The nature of the uninsured motorist clause in policies of automobile insurance which requires arbitration of disputes is such that the courts and not arbitrators should determine its meaning; the clause is not an ordinary commercial arbitration clause affecting only the contracting parties, but a universal feature of a contract of adhesion which affects the entire population of the state.*

*Dickinson, Pike, Mourad, Brandt & Hanlon* (by *Ronald R. Hanlon)* and *Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *James G. Gross)* of counsel, for the plaintiff.

*Moore, Sills, Poling, Wooster & Sinn, P.C.* (by *Richard B. Poling, Jr.),* for defendant Gavin.

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Sheldon L. Miller)* for defendant Standfest.

RYAN, J. In this dispute between defendants and their automobile insurance company over the liability limits for uninsured motorist coverage, we are called upon to determine the extent to which the decision of private automobile insurance contract arbitrators is judicially reviewable.

Plaintiff has challenged the validity of two separate and unrelated arbitration awards, each in excess of $20,000, the policy limits of the contracts of insurance in each of the cases.

By our orders of October 10, 1980,[1] we consolidated these cases and granted leave to appeal, directing the parties to brief the question:

"[Whether] the Court of Appeals clearly err[ed] in concluding that the arbitrators were authorized by the insurance contract[s] to ignore the language of [the] contract[s] precluding the insured from 'stacking' insurance policies."[2]

We have concluded that the Court of Appeals erred in both cases.

## I

On October 27, 1975, while driving her automobile, Nancy Gavin was involved in an accident with an uninsured motorist. She was severely injured. Ms. Gavin was the named insured under a policy of insurance covering her vehicle and writ-

---

[1] *DAIIE v Gavin,* 409 Mich 921 (1980); *DAIIE v Standfest,* 409 Mich 922 (1980).

[2] *DAIIE v Gavin,* Court of Appeals unpublished opinion per curiam, Docket No. 77-4254, released August 24, 1978. *DAIIE v Standfest,* 96 Mich App 71; 292 NW2d 164 (1980).

ten by the Detroit Automobile Inter-Insurance Exchange. The liability limit for uninsured motorist coverage under the policy was the standard $20,000 per individual.

At the time of the accident, Ms. Gavin's father was the named insured in three other policies issued by DAIIE covering three vehicles which he owned, each containing the standard $20,000 limit of liability for uninsured motorist protection. Ms. Gavin was a member of her father's household.

On June 15, 1976, defendant Gavin filed for arbitration with the American Arbitration Association under the terms of the four insurance policies, seeking recovery for her injuries under all four of the policies.

Thereafter, DAIIE, maintaining that the insurance policy benefits could not be "stacked" after October 1, 1973, filed an action for declaratory judgment in the Wayne Circuit Court, seeking resolution of the question whether defendant Gavin was entitled to "stack" the four policies. The circuit court granted summary judgment in defendant's favor on the ground that the stacking issue was an arbitrable question under the policies and remanded the matter to arbitration.

On May 23, 1977, the dispute was heard before a panel of arbitrators. The issues of damages and the stacking of uninsured motorist coverage were considered. Ms. Gavin took the position that she was entitled to a maximum of $80,000 in uninsured motorist benefits, the sum total of the limits of the four policies. DAIIE claimed that coverages could not be stacked and that the maximum amount available to Ms. Gavin was $20,000 under

the terms of the insurance policy applicable to the
car she was driving at the time of the accident.

On July 29, 1977, the arbitrators rendered an
award of $39,000. Notice of the award was sent to
the parties on August 2, 1977, and received on or
about August 3, 1977. On August 24, 1977, the
attorney for Ms. Gavin advised DAIIE that 20 days
had passed subsequent to the receipt of the notice
of award. Two days later, on August 26, 1977,
DAIIE filed a delayed motion to vacate the award
on the basis that the arbitrators had "exceeded
their powers". GCR 1963, 769.9(1)(c). Defendant
Gavin responded by filing an answer and brief in
opposition as well as her own motion to confirm
the award.

On October 14, 1977, the circuit court entered
an order denying DAIIE's delayed motion to va-
cate the award and entered a judgment confirming
the $39,000 award with interest and costs. DAIIE
satisfied the judgment to the extent of $20,000 and
appealed to the Court of Appeals. On August 24,
1978, the Court of Appeals affirmed the circuit
court on the ground that once substantive arbitra-
bility is determined judicial review of arbitration
effectively ceases, and on the ground that DAIIE's
motion to vacate the arbitration award was not
timely filed. It is from that determination that
DAIIE appeals to this Court.

On March 28, 1977, while driving a 1975 Ford
pickup truck, defendant Kathleen Standfest was
involved in an accident caused by an uninsured
motorist. The truck being driven by defendant was
insured by plaintiff DAIIE and defendant was a
named insured under the policy. At the time of

the accident, she also owned a 1975 Toyota automobile insured by plaintiff.

Defendant filed for arbitration with the American Arbitration Association. She sought recovery under both policies of insurance issued by plaintiff. It was her position that the policies, containing uninsured motorist coverage, could be stacked. It was the position of the Detroit Automobile Inter-Insurance Exchange that coverages could not be stacked or pyramided after October 1, 1973, and that the maximum amount available to her was $20,000.

On April 6, 1978, the arbitrators rendered an award of $35,000. Notice of the award was received by DAIIE on April 10, 1978, and on April 21, 1978, it filed a motion to vacate the arbitration award in the Wayne Circuit Court. On August 16, 1978, an order was issued denying plaintiff's motion to vacate the award, confirming the award, and entering judgment in the amount of $35,000. Plaintiff partially satisfied the judgment by paying to defendant the sum of $20,000, the policy limits of the uninsured motorist provision of the insurance contract on the 1975 Ford pickup truck.

Plaintiff filed a timely claim of appeal to the Court of Appeals. On March 5, 1980, the Court of Appeals issued a published per curiam opinion affirming the trial court reasoning that because it was "unclear" at the time of the award whether the arbitrators had the power to stack the insurance policies, their decision to exercise such power was unreviewable. From that decision DAIIE sought and was granted leave to appeal to this Court.

## II

All of the policies involved in both the cases before us contain what have popularly come to be known as anti-stacking clauses. DAIIE claims that the plain language of these provisions prohibits insureds from recovering in excess of the policy limits of one applicable policy.

The first of the provisions upon which the plaintiff relies is the so-called "owned vehicle exclusion" which appears in each of the policies and provides:

"The insurance afforded by this coverage does not apply:

"(1) to bodily injury to an insured sustained while occupying any automobile, other than an owned automobile, except a non-owned automobile to which there is applicable and available to such insured no insurance similar to that afforded by this coverage."

The "definitions" section of the policy define owned and non-owned automobiles as

"(d) 'owned automobile' means the vehicle described in the declaration certificate and, as defined herein, a temporary substitute automobile, a replacement automobile, and a trailer owned by the insured;

\* \* \*

"(i) 'non-owned automobile' means any automobile or trailer, other than a temporary substitute automobile, not owned by, furnished or available for the frequent or regular use of the named insured, relative or other resident of the same household of such named insured, however, an automobile or trailer rented or leased by the named insured or relative for a continuous period of 30 days or less shall not be deemed to be furnished or available for frequent or regular use."

The second provision upon which DAIIE relies

as limiting its liability to $20,000 in each case is the "other insurance" provision:

"6. Other Insurance

"With respect to bodily injury to an insured sustained while occupying an automobile or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the exchange shall not be liable under this coverage for a greater proportion of the applicable limit of liability of this coverage than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"Subject to the foregoing paragraph, if the insured has other similar insurance available to him against a loss covered by this coverage, the exchange shall not be liable under this coverage for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

In addition to these provisions the policies each contain an agreement for arbitration of any dispute related to the uninsured motorist coverage:

"In the event of disagreement and upon the written demand of either, the matter or matters upon which the insured and exchange do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The insured and the exchange each agrees to consider itself bound and to be bound by any award made by the arbitrators pursuant to this coverage. Such an award shall be a condition precedent to any action against the exchange by reason of the insurance afforded by this coverage."

Because the foregoing arbitration clause of the insurance contracts include the provision that "judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof", the arbitration is governed by MCL 600.5001 *et seq.;* MSA 27A.5001 *et seq.,* and is said to be statutory.[3] Section 5021 of the statute specifies that statutory arbitration is to be governed by the rules of the Supreme Court.

GCR 1963, 769.9(1) addresses the bases on which a court shall vacate an award:

"(1) Upon application of a party, the court shall vacate an award where:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(c) The arbitrators exceeded their powers; or

"(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to

---

[3] MCL 600.5001, subds (1) and (2); MSA 27A.5001, subds (1) and (2) states:

"(1) All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action, except as herein otherwise provided, and may, in such submission, agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission.

"(2) A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter."

hear evidence material to the controversy or otherwise so conducted the hearing as to prejudice substantially the rights of a party.

"But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

GCR 1963, 769.10(1) declares the grounds upon which the court will modify or correct an award:

"(1) Upon application by motion made 20 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

"(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(b) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

"(c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

Finally, the statute makes clear that the court retains all its equitable powers over arbitration proceedings. MCL 600.5035; MSA 27A.5035.

## III

DAIIE has advanced a two-pronged argument:

First, that under this Court's holdings the "owned vehicle exclusion" and "other insurance" clauses pertaining to uninsured motorist coverage were valid and enforceable as against these defendants at the time of the accidents and subsequent arbitration awards, and

Second, that the arbitration awards must be

vacated on the basis of GCR 769.9(1)(c) because the arbitrators "exceeded their powers" by refusing to enforce the anti-stacking language of the contract from which they derived their authority.

In order to understand the DAIIE's first argument concerning the enforceability of the "owned vehicle exclusion" and "other insurance" anti-stacking clauses, and the defendant's response which is summarized below, it is necessary to appreciate the implications of this Court's decisions in *Blakeslee v Farm Bureau Mutual Ins Co of Michigan,* 388 Mich 464; 201 NW2d 786 (1972), and *Boettner v State Farm Mutual Ins Co,* 388 Mich 482; 201 NW2d 795 (1972), and the automobile no-fault insurance act of 1973.

In 1972, in *Blakeslee* and *Boettner,* this Court declared that the industry-wide automobile insurance policy "other insurance" and "owned vehicle exclusion" standard clauses, if enforced, would preclude the insured from stacking coverages in violation of the policy inherent in MCL 500.3010; MSA 24.13010, effective January 1, 1966. That statute required that uninsured motorist coverage be affirmatively offered to any and all insureds covered for liability. The Court's reasoning was that it was a violation of the policy of the uninsured motorist statute to permit insurers to take away with anti-stacking clauses what had to be offered by § 3010; *viz.,* full uninsured motorist coverage upon every policy issued.

In 1973, however, with the enactment of the automobile no-fault act, § 3010 was repealed. With that repeal, the policy justification for invalidating "other insurance" and "owned vehicle exclusion" clauses announced in *Boettner* and *Blakeslee* dis-

appeared. Nevertheless, it was not until *Bradley v Mid-Century Ins Co,* 409 Mich 1, 48; 294 NW2d 141 (1980), that this Court announced "that in [automobile insurance] policies effective on or after October 1, 1973, the date of repeal of the uninsured motorist amendment, other insurance clauses which provide that damages shall be deemed not to exceed the policy limits * * * are enforceable and benefits under such policies may not be stacked".[4]

DAIIE argues that not only should the arbitration panels have recognized in 1977 and 1978, when the awards were made in these cases, that *Blakeslee* and *Boettner*'s underpinnings had disappeared with the repeal of § 3010, but also that absent that statutory provision providing justification for invalidating the anti-stacking clauses, they had always been enforced. DAIIE points to *Rowland v DAIIE,* 388 Mich 476; 201 NW2d 792 (1972), a case handed down the same day as *Boettner* and *Blakeslee,* which upheld the validity of the "owned automobile exclusion" to prevent stacking because the insurance policy construed was issued prior to the effective date of § 3010. DAIIE also relies on *Horr v DAIIE,* 379 Mich 562; 153 NW2d 655 (1967), in which the plaintiff sought to stack cover-

[4] We expressly refrained from deciding whether the "owned vehicle exclusion" could be used to preclude stacking. See *Bradley,* pp 48-49, fn 55.

Although we have since ruled that the "owned vehicle exclusion" is a valid exclusionary clause limiting insurer liability for medical and disability expenses in accidents occurring before the no-fault insurance act took effect, *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355; 314 NW2d 440 (1982), there is no clear majority for the validity of such exclusionary clauses to residual liability coverage in post-no-fault cases, *State Farm Mutual Automobile Ins Co v Ruuska,* 412 Mich 321; 314 NW2d 184 (1982). However, because the "other insurance" clause is clearly enforceable, the validity of the arbitration awards in the cases before us can be evaluated in its light alone.

age in the face of an "other insurance" clause with respect to an accident which predated § 3010. Finding no reason to limit the application of the clause, the Court ordered it enforced as written.

The second and more important of DAIIE's positions is that the arbitration awards must be vacated on the basis of GCR 1963, 769.9(1)(c) because the arbitrators "exceeded their powers" by refusing to enforce the plain language of the insurance contract from which they derived their authority.

Ms. Gavin defends on a number of grounds. She argues initially that the circuit court did not have jurisdiction over DAIIE's delayed motion to vacate the arbitration award since it was filed more than 20 days after DAIIE received notice of the arbitration award, contrary to GCR 1963, 769.9(2). She next asserts that even if the plaintiff is properly before the court, it cannot be said with certainty that at the time of the award the arbitration panel committed legal error since the law was unsettled as to the validity of anti-stacking clauses after 1973 and before 1980. Furthermore, she argues, the anti-stacking clauses involved in this case can be distinguished from those clauses in effect prior to 1965 and declared valid by this Court. She claims that the arbitrators did not exceed their powers by ignoring the anti-stacking clauses where the law was in flux as to the validity of those clauses and the circuit court had ordered the issue remanded to arbitration. Finally, she argues that even if the arbitrators committed legal error, that does not justify vacating an award where the parties have agreed to be bound by the arbitrator's decision.

Defendant Standfest advances a similar policy

argument: that arbitration awards should not be overturned by the courts for anything less than "manifest disregard of the law"—defined by her as a refusal by the arbitrators to apply "controlling precedents" with which they have been presented.

Neither defendant directly challenges *Bradley*'s announced validation of "other insurance" clauses to preclude stacking. Both argue that until *Bradley* was handed down there was no clear legal precedent upon which the arbitration panels could have relied to determine whether or not the "other insurance" and "owned automobile exclusion" clauses should be enforced. Thus, they argue, the arbitrators were free to decide either way and that their determination should not be disturbed by this Court.

IV

We first address defendant Gavin's claim that the circuit court lacked jurisdiction to hear DAIIE's delayed motion to vacate the arbitration award.

GCR 1963, 769.9(2) provides that an application to vacate an award "shall be made within 20 days after delivery of a copy of the award to the applicant". It is not disputed that defendant's motion to vacate in *Gavin* was filed beyond the 20-day period. Even so, we do not read the 20-day period as defining the jurisdictional authority of the circuit court.

The 20-day rule must be examined not only for its intended purpose within the process for arbitration as established in rule 769 specifically, but also for its function as a judicially promulgated proce-

dural court rule generally. We are not inclined to construe time limitations found in our court rules as absolute jurisdictional barriers. The vagaries and equities in diverse judicial proceedings are far too complex to be circumscribed by all-encompassing, absolute procedural deadlines of jurisdictional finality. On occasion there may be compelling reasons for so reading the rules, but this is not one of them. We read the rule as delineating a litigant's right to challenge an arbitration award. There is nothing in either the explicit language of the rule or the policy it is intended to effect— moving disputes in a timely fashion through the judicial process—that mandates that a circuit judge's discretionary power to permit a party to plead beyond established time limits upon a showing of excusable neglect, GCR 1963, 108.7(2), is, or should be, curtailed.[5]

It is apparent from an examination of the arguments made to the circuit judge that he was fully aware of defendant Gavin's jurisdictional claim. Nevertheless, his order, drafted by defendant, gives no indication of the grounds used to "deny" DAIIE's delayed motion to vacate. We are unwilling to assign DAIIE's failure to timely file its motion to vacate as a reason. We are satisfied that the trial judge accepted the delayed motion, considered the merits and denied on those grounds. While the trial court's dispositive order cited provisions of the general court rules in confirming the

---

[5] Defendant Gavin asserts that *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975), implied that the 20-day rule was jurisdictional. That implication is not fairly drawn. What was said in *Nickerson,* p 328, is repeated today; the party challenging an arbitration award in circuit court loses only the *right* to proceed where his motion is untimely filed. The court's jurisdiction over the challenge is not lost because the motion to vacate was untimely filed. The court may, in its discretion, permit the untimely motion.

award but did not cite GCR 1963, 769.9(2) in denying the motion to vacate, the order states that the motion was "heard" and "denied" rather than dismissed as would be appropriate if the merits were not considered.[6]

Having concluded that the trial judge exercised his discretion in accepting the delayed motion to vacate the award, we find no abuse in these circumstances. By entertaining the delayed motion, the circuit court gave effect to the spirit of GCR 1963, 529.1 in avoiding "the consequences of any error or defect in the proceeding which does not affect the substantial rights of the parties". The delay here was only three days. There was no prejudice to defendant Gavin in permitting the delayed filing. Though DAIIE's excuse for the late filing is not compelling,[7] in light of the minimal

[6] The substantive portion of the judgment order in full provided:

"At a session of said court, held in the City-County Building, Detroit, Michigan, on October 14, 1977.

"Present: Honorable Judge Robert L. Shipper, Circuit Court Judge.

"The Detroit Automobile Inter-Insurance Exchange's delayed motion to vacate arbitration award and Nancy M. Gavin's motion for confirmation of arbitrator's award having come on to be heard, and the court being otherwise fully advised in the premises;

"It is hereby ordered that the Detroit Automobile Inter-Insurance Exchange's delayed motion vacating arbitration award is denied.

"It is further ordered and adjudged that the arbitrators' award is confirmed pursuant to GCR 769.8 and 769.9(4) and judgment in the amount of thirty-nine thousand ($39,000.00) dollars is entered in favor of Nancy M. Gavin and against the Detroit Automobile Inter-Insurance Exchange, together with interest from July 29, 1977, and costs to be taxed.

"Judge Robert L. Shipper
"Circuit Judge for Judge Boewe"

[7] DAIIE's excuse was that at the time of its receipt of notice of the award, the attorney handling the matter for DAIIE was in the process of severing his employment relationship with the exchange in order to move to California.

In the course of that disruption, the file was misplaced between August 3, 1977, and August 24, 1977, when defendant notified DAIIE that the 20-day period had run.

delay and absence of prejudice, we cannot say that the trial judge abused his discretion.

V

We turn now to the central issue presented in these cases: when should the judiciary invade an arbitration award to which, by contract, the parties agreed to be "bound"?

Though we begin our analysis within the seemingly obvious guidelines established by statute and court rule, we note at the outset how faint those guidelines become in the shadows cast by the uncertain source and scope of arbitrator authority and the court's announced retention of its full equitable powers in statutory arbitration cases.

In light of the unambiguous contractual "other insurance" provision[8] which precludes stacking in the cases before us, the arbitration awards in excess of $20,000 which clearly were the result of stacking, and our *Bradley* opinion, it cannot be doubted that the arbitration panels in both cases erred as a matter of law. We do not, by that observation, suggest any bad faith or impropriety on the part of the arbitrators. What is at issue is whether the error committed is one the courts should correct.

DAIIE rests its claim that the awards should be vacated upon the provision of GCR 1963, 769.9(1)(c), and concludes that the "arbitrators

[8] We reject outright defendant Gavin's assertion that the language of the "other insurance" clause contained in these policies can be read to render DAIIE liable for the "total applicable limits of liability of all valid and collectible insurance against such loss". The plain language of the two-paragraph clause does not bear such a reading. It clearly precludes stacking.

exceeded their powers" in awarding more than
$20,000 in each of these cases. Defendants argue
that the insurance policy contracts provided for
submission to arbitration of "any dispute" and
that such an expression is broad enough to give
the arbitrators the power to decide whether the
anti-stacking clauses were valid, and that absent
clearly binding precedent, wilfully ignored by the
arbitrators, their award should be confirmed.

A

Citing *Farr v Michigan Mutual Liability Co,* 100
Mich App 190, 193; 298 NW2d 708 (1980), the
defendants in both cases argue that *"[t]he* purpose
of arbitration is to avoid protracted litigation"
(emphasis added) and claim that to preserve that
purpose the judiciary should not vacate a statutory
arbitration award for a "mere error of law".

If the sole or even primary goal of private
arbitration were the expeditious, inexpensive, and
unreviewable resolution of private disputes, we
might be persuaded of the justice of the no-review
rule urged by Ms. Gavin, or the *Farr* rule urged by
Ms. Standfest, of virtual non-reviewability. But
those are not the goals or purposes of statutory
arbitration.

When parties enter into an agreement and spell
out in a written contract the terms of their agree-
ment, and they are so concerned with the enforce-
ment of those terms that further provision is made
within the same contract for resolution of poten-
tial disputes by arbitration, it is clear that the
*primary* concern of the parties is the enforcement
of the terms of the agreement which they have

made, securing to each of them the benefits to
which they are entitled under the applicable law,
including their own agreement. Their secondary
concern is the manner, expense, promptness, and
finality with which an unintended and unexpected
dispute between them will be resolved, should one
develop. The defendants in the cases before us did
not buy their insurance policies in order to give
employment to arbitrators or to enjoy the relative
advantages of the procedural and substantive as-
pects of arbitration dispute resolution instead of
traditional litigation. They were concerned with
buying insurance coverage and, in the event of an
accident, receiving the policy proceeds. The insur-
ance company and the defendants contracted for
the purpose of guaranteeing to themselves the
benefits to which they are entitled under the law
governing their contractual relationship: the con-
stitution, the common law, any relevant codes and
statutes, and, perhaps pre-eminent among all, the
provisions of their own contracts. We are not
ready to assume that the parties in these cases
agreed to forego observance of a plainly applicable
provision of their written contract, one which is
dispositive of the only matter genuinely in dispute
between them, in exchange for a speedy, thrifty,
and final resolution of their differences in a way
which disregards the law substantially determina-
tive of their rights and duties. The process of
dispute resolution and the procedural advantages
of arbitration are the servants of the law govern-
ing the issues in dispute, not the reverse.

We think the defendant's argument inappropri-
ately assigns to the procedural advantages of arbi-
tration the pre-eminence to which substantive le-
gal correctness is entitled.

B

It is next argued by defendants, and with considerable support from several decisions of our Court of Appeals, that a rule permitting judicial review of arbitrators' "mere errors of law" will see the trial and appellate courts inundated with a floodtide of "appeals" of arbitration awards.

While we are respectfully appreciative of the expression of concern for docket overload, we think the anticipated crush of such "appeals" is vastly overstated.

We observe parenthetically that there is a certain irony in the notion that the judiciary should stand ready to validate statutory arbitration awards, whether lawful or unlawful, but should not insist upon legal substantive correctness because to do so would overload the courts. What, one is left to wonder, is the purpose of the courts in the first place? And if correcting controlling legal errors which have substantially affected statutory arbitration awards will inundate the courts, what does that say about the quality of such awards?

The scope of judicial review of an arbitration award is necessarily dictated in large measure by the procedural form the arbitration proceedings take. Reviewing courts can only act upon a written record. There is no requirement that a verbatim record be made of private arbitration proceedings, there are no formal requirements of procedure and practice beyond those assuring impartiality, and no findings of fact or conclusions of law are required. Thus, from the perspective of the record alone, a reviewing court's ability to review an

award is restricted to cases in which an error of law appears from the face of the award, or the terms of the contract of submission, or such documentation as the parties agree will constitute the record.

Arbitration, by its very nature, restricts meaningful legal review in the traditional sense. As a general observation, courts will be reluctant to modify or vacate an award because of the difficulty or impossibility, without speculation, of determining what caused an arbitrator to rule as he did. The informal and sometimes unorthodox procedures of the arbitration hearings, combined with the absence of a verbatim record and formal findings of fact and conclusions of law, make it virtually impossible to discern the mental path leading to an award. Reviewing courts are usually left without a plainly recognizable basis for finding substantial legal error. It is only the kind of legal error that is evident without scrutiny of intermediate mental indicia which remains reviewable, such as that involved in these cases. In many cases the arbitrator's alleged error will be as equally attributable to alleged "unwarranted" factfinding as to asserted "error of law". In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable.

Finally, the narrowly drawn rule we announce today for identifying errors of law of a magnitude sufficient to vitiate the validity of an award will, we think, discourage any thought that the judiciary will welcome wholesale "appeal" of arbitration awards.

The question, even more finely tuned, then is: of what dimension must an arbitrator's error of law be to warrant sacrifice of the procedural advantages of finality in favor of judicial intervention to vacate an award on the grounds that the arbitrators "exceeded their powers"?

It must be plain to even the most casual student of this subject that some errors of law in an arbitration award may be so egregious, may so materially affect the outcome of the arbitration, may so plainly demonstrate a disregard of principles fundamental to a fair resolution of the dispute, or may so unequivocally generate a legally unsustainable result, that they cannot be said to be within the parties' agreement to arbitrate or the arbitrator's authority.

At the same time, it is equally plain that there are cases in which error committed by the arbitrators, either in the procedure governing the conduct of the dispute resolution or even in the application or non-application of a legal principle, is so minimal and inconsequential to the outcome of the arbitration as to be immaterial. Justice and common sense demand that we draw a line between the two and that it be drawn sufficiently close to the center of the spectrum that it cannot in fairness be said that the line is a fiction and that errors of substantive law, no matter how egregious, are never reviewable because they are the price paid for the procedural advantages of the dispute resolution.

A beginning effort was made to draw that line with the adoption of GCR 1963, 769.9. This Court wrote broadly there as to the circumstances in which courts would review an arbitration award

and declared *inter alia* that such review would be undertaken when:

"The arbitrators exceeded their powers".

It is time now to finish the task by announcing a standard by which all interested parties may measure whether a given misstep by arbitrators means that the "arbitrators exceeded their powers".

Another way to state the proposition is to observe that in GCR 1963, 769.9 we declared that reviewing courts will undertake to examine the validity of an arbitration award when it is shown that in making the award the arbitrators "exceeded their powers". In so saying, the Court was announcing the *scope* of review of arbitration awards. What we must decide today are the criteria to be used hereinafter to determine *whether* the arbitrators have exceeded their powers, and in so saying announce the *standard* of review.

At one theoretical pole is the argument that "mere errors of law" in an arbitration award are never judicially reviewable and that only ancillary defects in the process, or corruption, or fraud on the part of the arbitrators or the disputants, or serious misconduct by either of them, or the refusal to grant an adjournment, or the refusal to hear material evidence will justify judicial intervention. Somewhat closer to an intermediate position is the rule announced in *Farr, supra,* and proposed by defendant Standfest in this case, that errors by arbitrators which amount to a "manifest disregard of the law" should warrant judicial nullification of the award.

At the opposite pole is the argument that an

arbitration award stands in no different place than the determination of a trial court following traditional litigation and should be reviewable according to the same standards.

We think none of those proposals are sufficiently consistent with the legislative purpose of statutory arbitration, the meaning of GCR 1963, 769.9(1)(c), the policies underlying private arbitration, or the constitutional duty of the judiciary. Before identifying a standard of review which we think is consistent with those criteria, it is appropriate to address the proper function of the judiciary in cases of statutory arbitration.

C

It is not open to debate that arbitrators do not function in a legal vacuum. All would agree that they are not free to decide the disputes submitted to them by recourse to a coin toss, or other capricious means, entirely without regard to the controlling principles of law which govern the rights and duties of the parties. Statutory arbitration is a legislatively ordained process by which the arbitration results, and the means employed to reach them, are presented for judicial validation or rejection. We have no question that in such cases the arbitrator's decisional process is circumscribed by a requirement of adherence to the principles of law which govern the issues in dispute. Chief among them is the contract which most immediately defines the rights and duties of the parties and confers upon the arbitrator the authority to act. Plainly, arbitrators who derive their authority from the contract calling for their services are bound to act within the terms of the submission.

It is argued that in submitting a dispute to private arbitration, parties are presumed to have assumed the risk of, and waived objection to, the arbitrator's "mere errors of law". If that is ever true, it is certainly not true of statutory arbitrations.

Parties to a contract calling for statutory arbitration are not free to agree, implicitly or explicitly, that their dispute will be resolved in disregard of controlling principles of constitutional, statutory, or judge-made law, and expect the courts to approve and enforce the result.

The Michigan judiciary is not a procedural pass-through bureaucracy which may, by agreement of private disputants, be used to validate patently erroneous arbitration awards as a trade-off for docket relief and speedy, inexpensive, and unreviewable dispute resolution. We cannot give parties the use, and benefit, and authority of the state's judicial process which exists *solely* to interpret and apply the law by giving effect to an agreement to ignore the law.

If the appellate judiciary has any proper function at all, it is to correct material error. In determining whether to reduce to judgment the awards of statutory arbitrators, one of the court's functions, perhaps its most important, is to determine whether the award rests upon an error of law of such materiality that it can be said that the arbitrators "exceeded their powers". Thus, in statutory arbitration, the arbitrators are not free to ignore controlling principles of law, either intentionally or unintentionally, even with the consent of the parties, and expect an ultimate judicial imprimatur as well.

Thus, in discharging their duty, arbitrators can fairly be said to exceed their power whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law.

We note briefly that by ignoring express and unambiguous contract terms, arbitrators run an especially high risk of being found to have "exceeded their powers". When faced on the one hand with express terms of the contract governing the dispute, and on the other with uncertainty as to the judicial enforceability of those terms, the more prudent course for the arbitrator would be to give effect to the express terms of the contract. Such an approach will obviously not insulate all awards from judicial review, but since most commercial contracts are not written to contain legislatively or judicially condemned provisions, a majority will be so insulated from an "excess of power" attack.

Having placed in what we think is proper perspective the primary purpose of statutory arbitration and the role of the judiciary in acting upon an award, we turn now to identify the magnitude of legal error which will warrant rejection of an award under GCR 1963, 769.9(1)(c).

## VI

The justification for statutory arbitration as a means of dispute settlement lies both in the statute and in freedom of contract. The outer limits of that freedom, within the context of the statute which calls for the determination of a private tribunal to be confirmed and enforced by a court of law, are circumscribed by the fundamental duty of the judiciary to assure that its equitable power is

exercised in keeping with the rule of law. We acknowledge without hesitation the important role commercial arbitration plays in this state and reaffirm the legitimate goals of speed, informality, and finality to which that system of dispute resolution aspires. Still, we cannot ignore the sacrifice in legal precision implicit in arbitration.

Our examination of the Michigan Supreme Court case law addressing the question of judicial review of arbitrator error discloses no well-established, widely applied standard justifying judicial invasion of an arbitration award. That is understandable, at least in those reported cases involving common-law arbitration, since equity with its vagaries and fact-dependent results is the basis for judicial intervention. What is evident from this Court's opinions addressing the issue is that both equitable principles and the express terms of the contract which provide for arbitration play a central role in determining the finality of an arbitration award. For example, we find such statements as the following in a case where a contract committed to an arbitration panel the task of valuing property and the panel patently failed to take into account the value of water power generated by a mill on the property:

"But there is another view of this case which suggests itself to our consideration. It may be urged with some degree of plausibility, at least, that the defendant, by the terms of his submission to the arbitrators, virtually waived the objection which he now insists upon; that he thereby placed himself upon new grounds and upon new equities with the complainant upon the whole subject matter of the controversy.

"And it would seem that he did, so far as the submission was concerned, for that objection was not to be taken into consideration, or at least no reference was

made to it in the contract of submission, and inasmuch as their determination was to be made upon personal inspection without any testimony, we cannot well see how it could have been otherwise.

"If this position could be successfully urged by the complainant, and the court be limited to the terms of the submission in their inquiry, *then* the complainant might be entitled to a decree upon the award, unless it should be made to appear that there was something inequitable or unjust in the award; that is to say, unless there was something in the conduct of the complainant, or some error or mistake made by the arbitrators in the execution of their power, having strict reference to the terms of the submission, the effects of which would prejudice the rights of the defendant.

"No one can read the record in this case without being strongly impressed with the idea that the defendant would suffer great injustice by being compelled to abide by this award—forty acres of land, or thereabouts, and his saw mill and water power were valued by the arbitrators at the small sum of $442 * * *. None of the witnesses on the trial valued the property at less than $1,000, and some of them as high as $1,500.

* * *

"It is manifestly clear then, that they valued the two pieces of property independently of the water power, thereby enabling the complainant, by means of his right of election, to buy or sell at the appraised value; to acquire a valuable water power without paying any consideration therefor.

"This was an error on the part of the arbitrators; one going to the merits, and one for which a court of equity would set aside the award (*Van Cortlandt v Underhill,* 17 Johns 405 [1819]), and one which is conclusive against the rights of this complainant for the relief he asks." *Buys v Eberhardt,* 3 Mich 524, 529-531 (1855).

In a somewhat broader statement concerning the role of judicial review, it was stated in *Port Huron & N R Co v Callanan,* 61 Mich 22, 26; 34 NW 678 (1887), a case involving a dispute over

compensation for condemned property in which
the Court refused to vacate an arbitration award:

"The grounds set up are, in brief, that [the land-
owner] got representations before the [panel] which
were false * * *.

"There is power in a court of equity to relieve against
awards in some cases where there has been fraud and
misconduct in the arbitrators, or they have acted under
manifest mistake, and perhaps in some defined and
undefined cases. But it is evident that there are great
objections to any general interference by courts with
awards. They are made by a tribunal of the parties'
own selection, who are, usually at least, expected to act
on their own view of law and testimony more freely and
less technically than courts and regular juries. They are
also generally expected to frame their decisions on
broad views of justice, which may sometimes deviate
from the strict rules of law. It is not expected that after
resorting to such private tribunals either party may
repudiate their action and fall back on the courts. *And
equity, on whatever pretext it may intervene in such
cases, does so upon the reason that the tribunal has not
really acted within the lines of the duty laid upon it,
and has not in fact carried out the agreement under
which it has obtained authority to proceed."* (Emphasis
added.)

Similarly in *Brush v Fisher,* 70 Mich 469, 473,
478; 38 NW 446 (1888), in a dispute over an
arbitration award setting the rental value of prop-
erty, it was stated:

"Courts, however, favor awards made by tribunals of
the parties' own choosing, and are reluctant to set them
aside, and every presumption will be made in favor of
their fairness, and the burden of proof is upon the party
seeking to set them aside, and the proof must be clear
and strong. (Citations omitted.)

*     *     *

" 'It is a well-settled rule in equity,' says Senator

Allen in *Van Cortlandt v Underhill,* 17 Johns 420, 421
(1819) 'that an award of arbitrators of the parties' own
choosing, unless outrageously excessive on the face of it,
and such as would induce every honest man, at first
blush, to cry out against it, cannot be set aside, unless
there be corruption, partiality, misconduct, *or the use
of an excess of power* in the arbitrators, or fraud upon
the opposite party'." (Emphasis added.)

In *M'Curdy v Daniell,* 135 Mich 55, 56; 97 NW
52 (1903), this Court confronted a procedural chal-
lenge to the arbitration award—whether unanim-
ity was necessary under the terms of submission—
and concluded that the award should be set aside
because "[t]he contract under which the arbitra-
tors acted was not the contract agreed upon". The
validity of the panel's award rested on its confor-
mance with the parties' agreement. Inasmuch as a
less than unanimous award was not what the
parties agreed to, it could not be enforced.

In *Howe v Patrons' Mutual Fire Ins Co of Michi-
gan,* 216 Mich 560, 562; 185 NW 864 (1921), the
plaintiff, a member of a beneficial association
called the Order Patrons of Husbandry, or the
grange, purchased fire insurance from the defen-
dant, a company whose articles of association pro-
vided:

"This company is formed for the mutual protection of
its members, who are members in good standing in the
Order Patrons of Husbandry, for the purpose of mutual
insurance of their property against loss by fire."

The defendant, through its board of directors, had
promulgated a bylaw proclaiming:

"Every policy-holder shall keep his dues in the subor-
dinate grange of which he is a member fully paid up
and any policy-holder who shall permit or allow his

dues to remain unpaid for the space of nine months voids his policy and the company shall not be liable for loss or damage thereafter."

The plaintiff's property was destroyed by fire at a time when his grange dues were overdue. The matter was submitted to arbitration pursuant to another article of association and the panel determined that at the time of the fire the plaintiff was not insured. The plaintiff appealed.

After consulting a number of treatises and foreign jurisdictions, the Supreme Court determined that a grange member's "good standing" could not be destroyed merely because he was in arrears in his dues. The grange would have to take affirmative action to terminate a member's good standing. Thus, the defendant's bylaw was invalid because it was in conflict with the articles of association.

In examining whether the arbitration award could be vacated, Justice CLARK wrote:

"But what of the error in law? The arbitrators thought the bylaw valid and for that reason alone, as stated above, reached their conclusion. It is clearly apparent on this record that but for such thought plaintiff's claim must have been allowed. May an award be set aside for such error in law?

\* \* \*

"Our attention is called to no decision of this court precisely in point. To the rule in this state [to the effect that an arbitration award is final], this exception \* \* \* should be added, *that where it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside.* This is such a case." (Emphasis added.) *Howe,* pp 569, 570.

In *Stowe v Mutual Home Builders Corp,* 252 Mich 492, 497; 233 NW 391 (1930), this Court vacated an arbitration award resulting from resolution of a dispute over the amount owed on a building contract. The parties agreed to arbitration provided the arbitrators based their award on a determination of material and labor costs as of the construction dates. Instead, the arbitrators multiplied the cubic feet of the building by an arbitrary cost factor and ultimately found the builder indebted to the buyer.

In vacating the award, this Court stated:

"Arbitrators derive all their power and authority from the law. The agreement of arbitration entered into between the parties is the law of the case. An award based upon the agreement of arbitration must stand, in the absence of fraud or mistake, but an arbitrary award outside of the scope of the agreement of arbitration is not binding upon anyone, because it has no legal sanction. It is clear in this case the thing submitted to arbitration was the amount due on a written contract. This has not been determined."[9]

The foregoing cases, in addition to others not specifically set out here,[10] while not having to do with automobile insurance policy arbitration or even the court rule and statute here involved, demonstrate the historic tension between the rightful and appropriate roles to be played by arbitrators and courts of equity in resolving disputes.

We think it is safe to conclude from this look at

[9] See also *Acme Cut Stone Co v New Center Development Corp,* 281 Mich 32; 274 NW 700 (1937) (award upheld—arbitrator adhered to the bounds of the submission).

[10] See, additionally, *Corder v Michigan Mutual Hail Ins Co,* 279 Mich 697; 273 NW 320 (1937); *Carr v Kalamazoo Vegetable Parchment Co,* 354 Mich 327; 92 NW2d 295 (1958); *Frazier v Ford Motor Co,* 364 Mich 648; 112 NW2d 80 (1961).

the past, as did the dissenters in *Frazier v Ford Motor Co,* 364 Mich 648, 655, 657; 112 NW2d 80 (1961), that at common law the grounds upon which the courts may vacate an arbitration award at least include: (1) fraud on the part of the arbitrator or the parties; (2) gross unfairness in the conduct of the proceedings; (3) lack of jurisdiction in the arbitrator; (4) violation of public policy. It is hardly surprising that these common-law grounds correspond very closely to the grounds now contained in GCR 1963, 769.9(1). What has not emerged from this Court's prior statements, however, is a clearly articulated standard for gauging when arbitrators, in the language of GCR 1963, 769.9(1)(c), have "exceeded their powers", a formulation subsuming both categories (3) and (4) above.

A number of Court of Appeals decisions have discussed various standards, and a split of authority has resulted. Visiting Court of Appeals Judge QUINNELL accurately summarized the division of Court of Appeals opinion in *Farr, supra,* 100 Mich App 192-193:

"Defendant contends that the arbitration panel misapplied existing law and, as such, exceeded its powers within the meaning of GCR 1963, 769.9(1)(c). This Court is split on the issue of when legal errors committed by arbitrators in rendering their awards are reviewable pursuant to this court rule. Some of this Court's decisions state that where the arbitrators have made a 'clear error of law', the award is outside their scope of power. See *Detroit Automobile Inter-Ins Exchange v Spafford,* 76 Mich App 85, 87; 255 NW2d 780 (1977), *lv den* 402 Mich 825 (1977), and the cases cited therein.[1] Other decisions from this Court indicate that errors of law are not reviewable unless the arbitrators acted with 'manifest disregard of the law'. *Detroit Automobile Inter-Ins Exchange v Ayvazian,* 62 Mich App 94, 98, fn

1; 233 NW2d 200 (1975), *Lotoszinski v State Farm Mutual Automobile Ins Co,* 94 Mich App 164, 166-167; 288 NW2d 369 (1979). Manifest disregard of the law permits no review for mere errors of interpretation, no matter how clear the error may be. For there to be 'manifest disregard of the law' the arbitrators must have been presented with controlling precedents which they refused to apply. In our opinion, the manifest disregard of the law standard is the one which must be applied in reviewing arbitration decisions. The purpose of arbitration is to avoid protracted litigation. However, a rule of review based on 'clear error' would not promote this purpose in too many cases. Whether 'clear legal error' has been committed is far more open to debate in a given case than whether the arbitrators acted in 'manifest disregard of the law'. An advocate would have a much easier time convincing himself of an arbitrator's 'clear legal error' as opposed to a 'manifest disregard of the law'. Thus, the 'clear legal error' standard does not serve the rationale underlying arbitration as well as the 'manifest disregard of the law' standard."

"[1] The writer of this opinion acknowledges that he signed the opinion in *Spafford,* which used the 'clear legal error of law' standard of review of an arbitrator's decision. The 'manifest disregard of the law' standard was not briefed, argued or discussed in *Spafford."*

In *Farr,* the Court of Appeals faced the identical issue we now address and concluded that because the validity of anti-stacking clauses was unclear at the time the arbitrators made their award, the courts could not upset the award. In making that judgment, the Court of Appeals made a superior commitment to what it perceived to be "the purpose" of arbitration and did so as a policy choice in the absence of compelling precedent from the Supreme Court.

We think that Justice CLARK's formulation in this Court's opinion in *Howe,* describing the common-law duty of courts of equity in acting upon

private arbitration awards, more nearly reflects the correct standard for judicial review of a statutory arbitration award as well, than anything written by Michigan's appellate judiciary before or since. It is restated here for ease of reference:

"[W]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside." *Howe,* p 570.

We accept and adopt for application to automobile insurance policy statutory arbitration this formulation as reflecting the proper role of the courts in acting upon a motion to confirm or vacate arbitration awards.

We do not wish to be understood as subscribing to a "clear error" standard as that phrase has been used in some Court of Appeals decisions, notably *DAIIE v Spafford,* 76 Mich App 85; 255 NW2d 780 (1977), and *DAIIE v McMillan,* 97 Mich App 687; 296 NW2d 147 (1980). It is an imprecise and particularly confusing concept when used to attempt to describe the kind of legal error which warrants judicial intervention in arbitration results.

The character or seriousness of an error of law which will invite judicial action to vacate an arbitration award under the formula we announce today must be error so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise.

Reviewing courts should focus upon the materiality of the legal error to test whether judicial

disapproval is warranted, and not upon the question whether the rule of law was so well settled, widely known, or easily understood that the arbitrators should have known of it. Arbitrators are not necessarily trained in the law and are men and women of varying ability and expertise.

In the cases before us, the validity of the express contract terms was essentially a legal question. Questions of law are not primarily or even ordinarily within the province of arbitration. For the most part, arbitrators are concerned with factfinding. Because a degree of efficiency can be attained by permitting arbitrators to decide legal questions, we do not expect them to refrain from making the attempt when required to do so by the case. Nevertheless, just as a judge exceeds his power when he decides a case contrary to controlling principle of law, so does an arbitrator.

Thus, whether or not the *Gavin* and *Standfest* arbitration panels should have had the prescience to anticipate our decision in *Bradley, supra,* that unambiguous "other insurance" clauses were valid to preclude stacking is entirely beside the point. We will modify the awards not because the rule ultimately announced in *Bradley* was obvious, inevitable, or "clear", but because it is evident from the face of the awards that the arbitrators in those cases erred in not enforcing the anti-stacking provisions of the insurance contract, the terms of which primarily governed the controversy, and that but for such error the awards would have been substantially different.

While we announce today a broader role for the judiciary in statutory arbitration cases than is generally assumed in other jurisdictions,[11] we are

_____

[11] There is a large body of case law from other jurisdictions, including the federal courts, construing the federal arbitration act—a

confident that in doing so we not only properly define the function of courts of equity in such cases, but we secure to litigants who come to the courts for judicial confirmation and enforcement of arbitration results, that which we believe they agreed to: an arbitration award rendered according to the law which governs their dispute.

We hold that in disregarding the anti-stacking provisions of the "other insurance" clause of the contract from which, in part, they derived their powers, the arbitrators in both cases committed errors of law so substantial that, but for such errors, the awards must have been substantially different. In so doing, the arbitrators "exceeded their powers". GCR 1963, 769.9(1)(c).

Therefore, we reverse the decision of the Court of Appeals in each case, set aside the judgments entered in the Wayne Circuit Court, reduce the

statute substantially the same as our statute and court rule—which professes a very limited judicial review of arbitration awards. See, e.g., *Wilko v Swan,* 346 US 427, 436-437; 74 S Ct 182; 98 L Ed 168 (1953); *Burchell v Marsh,* 58 US (17 How) 344, 349-350; 15 L Ed 96 (1855); *Office of Supply, Government of the Republic of South Korea v New York Navigation Co,* 469 F2d 377, 379-380 (CA 2, 1972); *Lewis v Greyhound Lines-East,* 181 US App DC 116; 555 F2d 1053 (1977) (award not vacated in absence of procedural flaws), *cert den* 434 US 997; 98 S Ct 635; 54 L Ed 2d 491 (1977); *Sobel v Hertz, Warner & Co,* 469 F2d 1211 (CA 2, 1972) (mere error of law not grounds for vacation); *Raytheon Co v Rheem Mfg Co,* 322 F2d 173 (CA 9, 1963) (arbitration award cannot be set aside for misinterpretation of law); *DeMello v Souza,* 36 Cal App 3d 79; 111 Cal Rptr 274 (1973) (arbitrator's error of fact not matter for judicial review); *Durand v Wilshire Ins Co,* 270 Cal App 2d 58; 75 Cal Rptr 415 (1969) (erroneous conclusion based upon error of fact or law reached within scope of arbitration agreement held not grounds for vacation); *Del Bianco & Associates, Inc v Adam,* 6 Ill App 3d 286; 285 NE2d 480 (1972) (error of law or mistake of fact not grounds for vacation of award), *cert den* 410 US 955; 93 S Ct 1421; 35 L Ed 2d 688 (1973); *SCM Corp v Fisher Park Lane Co,* 40 NY2d 788; 390 NYS2d 398; 358 NE2d 1024 (1976) (awards not subject to review for error of law or fact); *Associated Teachers of Huntington, Inc v Huntington Bd of Ed,* 33 NY2d 229; 351 NYS2d 670; 306 NE2d 791 (1973) (even where arbitrators state intention to apply correct law and then misapply it, award will not be set aside).

award to each defendant to $20,000, confirm that award, and remand to the circuit court to enter judgment accordingly.[12]

Fitzgerald, C.J., and Williams and Coleman, JJ., concurred with Ryan, J.

Levin, J. *(concurring).* The essential question in these cases is whether an arbitrator's decision on a question of law is subject to review by a court. The reasoning of the opinion of the Court is subject to the construction that the courts may properly refuse enforcement of commercial arbitration awards on the ground that there has been a material, substantial, governing error of law.

We concur in the conclusion of the Court in the instant cases that the meaning of the uninsured motorist clause should be determined by the courts, on the ground that the especial nature of the uninsured motorist clause is such that the courts, not arbitrators, should determine its meaning.

I

Arbitration is a matter of contract. In contracting for arbitration, parties generally agree to substitute an arbitrator for a judge and jury as factfinder and decision maker on all questions, factual and legal. Whether questions of law are "primarily or even ordinarily within the province of arbitra-

---

[12] Though no formal motion was denominated a motion to correct or modify pursuant to GCR 1963, 769.10, it is clear that the relief sought by DAIIE in its motions to vacate is a *partial* vacation of both awards, the amounts in excess of $20,000. There existing no logical distinction between a partial vacation and a modification, we treat the motions as falling within the scope of both GCR 1963, 769.9 and GCR 1963, 769.10.

tion"[1] is a question of contract and not of law. It is well within the province of parties to a commercial arbitration to allow the arbitrator to decide questions of law as well as of fact, and agreements to arbitrate have generally been construed as contracts for deciding questions of law as well as of fact.[2]

The opinion of the Court stresses that this is statutory arbitration and that the jurisdiction of a court was invoked for confirmation and, if necessary, enforcement of the award. But most if not almost all commercial arbitration is statutory in the sense that the party who prevails may generally obtain, pursuant to the statute, confirmation and enforcement of the award by a court.[3] It is not as if there is something peculiar or unique about this being statutory arbitration or that the jurisdiction of a court has been invoked.

It has not, heretofore, been thought that an arbitrator exceeds his powers by deciding a question of law contrary to the view of the court to which application is made for enforcement of the award or to the view of the appellate courts.[4]

---

[1] *Ante,* p 444.

[2] See, *e.g., SCM Corp v Fisher Park Lane Co,* 40 NY2d 788, 793-794; 390 NYS2d 398, 403; 358 NE2d 1024, 1028-1029 (1976).

[3] See MCL 600.5001-600.5035; MSA 27A.5001-27A.5035.

[4] Pursuant to MCL 600.5021; MSA 27A.5021, this Court has promulgated court rules governing the conduct of statutory arbitration. The rules adopt certain provisions of the Uniform Arbitration Act.

GCR 1963, 769.9(1)(c), providing that a court shall vacate an arbitration award when the arbitrators "exceeded their powers", restates verbatim § 12(a)(3) of the uniform act. We therefore look to the construction of that section of the uniform act for guidance in construing GCR 1963, 769.9(1)(c). See 2A Sands, Sutherland Statutory Construction, § 52.05, p 340; *cf., e.g., In re Cress Estate,* 335 Mich 551; 56 NW2d 380 (1953); *In re Rackham Estate,* 329 Mich 493; 45 NW2d 273 (1951); *Lawrence Baking Co v Unemployment Compensation Comm,* 308 Mich 198; 13 NW2d 260 (1944).

All would agree that arbitration must work
within the framework of law. One can visualize an
award which is beyond the range of the authority
conferred on the arbitrator.[5] The courts will or
should protect against fraud, arbitrariness or other
abuse.

Rules of law declared by judges are subject to
change and are not so immutable that parties who
knowledgeably enter into a contract which substi-
tutes another lawgiver and factfinder should be
denied enforcement of their agreement.

Any reasonably skilled lawyer will have little
difficulty making a tenable argument that almost
any commercial arbitration award is based on an
error of law "so material or so substantial as to
have governed the award, and but for which the
award would have been substantially otherwise"[6]
and, accordingly, the arbitrator "exceeded his
power".

Judicial review of arbitration awards would radi-

As unanimously construed in other states, § 12(a)(3) restates the
common-law rule, see, *e.g., Great American Ins Co v American
Arbitration Ass'n*, 436 Pa 370, 373; 260 A2d 769, 770 (1970), that a
court may not disturb an arbitrator's decision on the ground that
there has been a mistake of law, see, *e.g., Hirt v Hervey*, 118 Ariz
App 543; 578 P2d 624 (1978); *Binkley v Maros*, 79 Ill App 3d 105; 398
NE2d 321; 34 Ill Dec 646 (1979); *City of Lawrence v Falzarano*, 380
Mass 18; 402 NE2d 1017 (1980); *Carolina Virginia Fashion Exhibitors,
Inc v Gunter*, 41 NC App 407; 255 SE2d 414 (1979). An arbitrator
thus does not "exceed his powers" under GCR 1963, 769.9(1)(c) by
making a mistake of law.

The same principle limits judicial review under the Federal Arbi-
tration Act, 9 USC 1-14. See, *e.g., Raytheon Co v Rheem Mfg Co*, 322
F2d 173 (CA 9, 1963).

In sum, under the uniform and federal acts and the common law, a
court may not set aside an arbitration award for a mistake of law.

[5] *Cf. Allstate Ins Co v Fioravanti*, 451 Pa 108, 116; 299 A2d 585, 589
(1973), where the court said that it could "hypothocate" a mistake of
law which it would feel obliged to correct.

[6] *Ante*, p 443.

cally transform arbitration. It is not simply a
question of what the courts would do. The opportu-
nity for delay and the cost of what might well
become a feature of post-arbitration proceedings
whenever there is sufficient money involved to
fund appellate proceedings would make arbitration
a less attractive alternative to litigation than it is
today.

Arbitration is popular because parties have con-
fidence that the results will be no less reasonable
and predictable than the results of litigation in a
court. If the courts were in all cases a superior
means of resolving disputes, there would be little
or no business for arbitrators. The case has not
been made to substitute judicial review for the
review of the marketplace which presumably elim-
inates those arbitrators who cannot be depended
upon to perform within a predictable range.

## II

The instant cases are different because the unin-
sured motorist clause is not an ordinary agree-
ment. Arbitration is a universal feature of the
uninsured motorist clause.[7] The uninsured motor-

---

[7] The uninsured motorist clause was developed by the insurance
industry in an effort to avoid the enactment of laws requiring that all
drivers purchase automobile insurance, as many years later required
by the no-fault automobile liability acts. See Widiss, *A Guide to
Uninsured Motorist Coverage*, § 1.6, p 10 and fn 22 (1969).

The drafters of the clause decided that disputes concerning the
meaning of the clause would be resolved by mandatory arbitration.
The clause, with its obligatory arbitration, became a part of most
insurance policies. Industry practice was subsequently given the
imprimatur of nearly every state by statute mandating uninsured
motorist coverage in all policies. See Widiss, §§ 1.2-1.11, pp 4-16;
Schermer, *Automobile Liability Insurance*, § 33.01, p 33-1 (1981).

Most of the statutes, including Michigan's, required that the cover-
age be provided unless expressly rejected in writing. The Michigan
statute did not mention the arbitration provision of the endorsement
and did not require, as many states do, see Widiss, *Uninsured Motor-*

ist clause appears in insurance policies of millions of persons and affects the entire population of the state. The uninsured motorist clause has been given statutory recognition at times in the law of Michigan.[8] This is not ordinary commercial arbitration affecting only the contracting parties or persons involved in a particular trade or undertaking. A policyholder does not have the option of contracting for a different means of resolving disputes over the meaning of the clause.[9]

The requirement of arbitration under the uninsured motorist clause is unique in its universality and effect. The clause has substituted another means of resolution for the thousands of disputes arising under it annually. In these circumstances, it cannot be said that the parties, either the insurer or the insured, contemplated that the construction of the language and the scope of the obligations and the rights of the parties would or could be determined differently by each of the numerous arbitrators who annually consider these cases.

---

*ist Claims, in Arbitration: Commercial Disputes, Insurance, and Tort Claims,* pp 215, 220-224 (Prac L Inst, 1979), the separate consent of the insured to arbitration. See MCL 500.3010; MSA 24.13010 (repealed by 1972 PA 345, effective October 1, 1973). Although Michigan's mandatory uninsured motorist coverage statute was repealed with the advent of the no-fault automobile liability act in 1973, see 1972 PA 345 repealing MCL 500.3010; MSA 24.13010, uninsured motorist clauses with their arbitration requirement remain ubiquitous features of automobile insurance policies.

[8] See fn 7 *supra.*

[9] "For most insureds the uninsured motorist provisions are no more than another incomprehensible portion of a total insurance package. In this context, it is unlikely that any of the uninsured motorist coverage terms set out in the midst of a multi-paged document are known or understood either by the purchaser or by anyone else protected by the uninsured motorist coverage. In other words, claimants almost without exception are not knowledgeable participants in the process of reaching an agreement to employ arbitration in lieu of litigation." Widiss, fn 7 *supra,* p 218.

When a system of arbitration is created affecting almost everyone in the state in much the same way as the system of courts affects everyone in the state, absent some other method for providing order, harmony and a rule of law for that system, the courts can properly intervene to provide that order, harmony and rule in lieu of disparate judgments.

These considerations, universal coverage, adhesion (lack of consent) and the need to provide order, harmony and a rule of law, do not obtain in ordinary commercial arbitration. While it may have become customary in certain industries to enter into agreements to arbitrate, it is within the capacity of the parties to negotiate concerning any issue that arises in the course of arbitration proceedings and to themselves resolve by agreement, at least for the future, matters which have been troublesome or have been treated differently by different arbitrators. Recognizing the need for a common rule and construction of the policy language in uninsured motorist cases does not require and should not be the basis for creating a sweeping new doctrine concerning arbitration generally.

This Court need go no further in the instant cases than to recognize, as have other courts, that the uninsured motorist clause is different. While courts in other jurisdictions have reviewed an arbitrator's construction of the uninsured motorist clause for errors of law,[10] no court, as far as we have been able to determine, has suggested that

---

[10] See, *e.g., Abbott v California State Automobile Ass'n,* 68 Cal App 3d 763; 137 Cal Rptr 580 (1977); *Allen v Interinsurance Exchange of Automobile Club of Southern California,* 275 Cal App 2d 636; 80 Cal Rptr 247 (1969).

the courts should or may review commercial arbitration awards generally for errors of law.[11]

KAVANAGH, J., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.

---

[11] See fn 4 *supra.*