ST BERNARD v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket Nos. 62732, 63683. Submitted October 4, 1983, at Detroit.—
Decided April 30, 1984.

Delbert St. Bernard was injured while a passenger in a vehicle
owned by Ray Powell when the Powell vehicle was struck by an
Ohio vehicle driven by an Ohio resident. The Ohio vehicle was
covered by bodily injury liability insurance with a policy limit
of $12,500 in accordance with Ohio law. It was undisputed that
Delbert St. Bernard suffered injuries in excess of $40,000.
Delbert St. Bernard and his wife Susan St. Bernard settled
with the insurer of the Ohio vehicle for the policy limits of
$12,500 and with their own no-fault insurer for $7,500, the
latter settlement being in lieu of contesting whether the unin-
sured motorist coverage of their own policy could be "stacked".
The St. Bernards sought uninsured motorist coverage benefits
from Detroit Automobile Inter-Insurance Exchange (DAIIE),
the no-fault insurer of the Powell vehicle. DAIIE denied the
claim on the basis that the Ohio vehicle was not an uninsured
motor vehicle within the language of the Powell policy, since

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 158.
    5 Am Jur 2d, Arbitration and Award § 145.
[2, 4] 5 Am Jur 2d, Arbitration and Award §§ 168, 169, 171.
    7 Am Jur 2d, Automobile Insurance § 347.
[3, 4] 7 Am Jur 2d, Automobile Insurance §§ 35, 322, 323, 356.
    Recoverability, under uninsured or underinsured motorist coverage,
      of deficiencies in compensation afforded injured party by tortfea-
      sor's liability coverage. 24 ALR4th 13.
    Validity of exclusion in automobile insurance policy precluding
      recovery of no-fault benefits for injuries arising out of the owner-
      ship, maintenance, or use of an uninsured vehicle owned by an
      insured. 18 ALR4th 632.
    Validity and construction of "no fault" automobile insurance plans.
      42 ALR3d 229.
    Automobile insurance: what constitutes an "uninsured" or "un-
      known" vehicle or motorist within uninsured motorist coverage.
      26 ALR3d 883.
[4] 7 Am Jur 2d, Automobile Insurance § 353.

the policy defined an uninsured motor vehicle as one which had no bodily injury liability insurance coverage and the Ohio vehicle had such coverage, albeit with a limit of coverage less than mandated by Michigan law. The St. Bernards commenced an arbitration proceeding pursuant to the uninsured motorist provisions and the arbitration provisions of Powell's DAIIE policy. The arbitrators awarded the St. Bernards $20,000, presumably the policy limits. The St. Bernards filed in Monroe Circuit Court a motion to confirm the arbitrator's award and for taxable costs and interest. DAIIE filed a motion to vacate the award. The court, James J. Kelley, Jr., J., denied the motion to vacate the award and granted the motion to confirm the award. The St. Bernards then filed a motion for entry of judgment and sought judgment interest at the rate of 12 percent per annum from the date of the denial of the claim by DAIIE. DAIIE argued that any judgment interest should be at the rate of five percent per annum from the date of the arbitration award. The circuit court entered a judgment with interest at the rate of 12 percent per annum running from March 6, 1979, a date approximately 60 days after DAIIE's rejection of the claim. DAIIE filed separate appeals from the order which granted the motion to confirm and denied the motion to vacate and from the order granting judgment interest. The appeals were consolidated. *Held:*

1. While there is limited judicial review of arbitration awards, a circuit court, upon an application to vacate an arbitration award, may set aside an arbitration award where the arbitrators have made an error of law that is so substantial that but for the error the award would have been substantially different.

2. The policy in question clearly excluded uninsured motorist coverage where there was any bodily injury liability insurance coverage available with respect to the subject vehicle. The only question before the arbitrators was the legal question of the validity of the definition of an uninsured motor vehicle contained in the policy issued by DAIIE.

3. Reliance on the prior case law which treated an underinsured vehicle, that is a vehicle having less coverage than is mandated by Michigan law, as an uninsured vehicle for the purpose of the uninsured motorist coverage of an automobile insurance policy issued in Michigan is misplaced, since those cases were decided when the inclusion of uninsured motorist coverage was strongly encouraged by law. Under the statutory scheme existing prior to the enactment of the automobile no-fault insurance act, there existed a strong public policy to

prohibit a definition of an uninsured vehicle which would eliminate coverage and thereby place an additional burden on the Motor Vehicle Accident Claims Fund. With the enactment of the automobile no-fault insurance act, the statutory basis for that strong public policy has been eliminated.

4. The arbitrators made a significant error of law in refusing to give effect to the language of the no-fault policy issued by DAIIE, and, but for that error of law, the matter would have been decided differently. Accordingly, the circuit court erred in denying the motion to vacate the arbitrators' award.

5. Since the resolution of the question of whether the award should have been vacated is dispositive, it is unnecessary to decide the proper rate of interest to be used in computing the interest on the award.

Reversed.

1. ARBITRATION — JUDGMENTS — JUDICIAL REVIEW — COURT RULES.

Review of judgments confirming or denying arbitration awards is limited in scope to those grounds provided in the court rules (GCR 1963, 769.9).

2. ARBITRATION — AUTOMOBILE INSURANCE — VACATION OF AWARDS.

The circuit court, upon application of a party to statutory arbitration to confirm or vacate an automobile insurance arbitration award, may set aside the award where on its face it appears that the arbitrators made an error of law so substantial that but for the error the award would have been substantially different; in such a case the arbitrators exceeded their powers (GCR 1963, 769.9[1]).

3. AUTOMOBILES — NO-FAULT INSURANCE — UNINSURED MOTORISTS COVERAGE.

An underinsured motor vehicle, that is, a motor vehicle having bodily injury liability coverage less than the coverage required under the Michigan statutory scheme, is not an uninsured motor vehicle within the meaning of the uninsured motorist coverage of an automobile no-fault insurance policy which defines an uninsured motor vehicle as a motor vehicle having no bodily injury liability insurance coverage; since uninsured motorist coverage is no longer statutorily mandated, the exclusion of uninsured motorist coverage where any bodily injury liability insurance coverage exists is not contrary to statute or public policy.

4. ARBITRATION — AUTOMOBILE INSURANCE — UNINSURED MOTORIST COVERAGE — VACATION OF AWARDS.

It is an error of law for arbitrators to grant an arbitration award

under the uninsured motorist coverage of a Michigan automobile no-fault policy where the policy defines an uninsured vehicle as one having no bodily injury coverage and the vehicle in question is an out-of-state vehicle having bodily injury liability insurance coverage in effect but with limits of coverage less than the Michigan mandated limits of coverage; under such circumstances, the insurance company is entitled to judicial relief from the arbitration award.

*Czeryba, Dulany & Godfroy* (by *Daniel J. Czeryba*), for plaintiffs.

*Dickinson, Mourad, Brandt, Hanlon & Becker* (by *Renee R. McDuffee*), and *Gromek, Bendure & Thomas* (by *James G. Gross*), of counsel, for defendant.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

SHEPHERD, J. Defendant appeals as of right from the circuit court order granting plaintiffs' motion to confirm an arbitrators' award and denying defendant's motion to vacate the award. Defendant also appeals from that portion of the circuit court's judgment which required defendant to pay 12 percent interest on the arbitration award. The appeals were consolidated by order of this Court.

Plaintiff Delbert St. Bernard was a passenger in an automobile driven by Ray Powell which was negligently struck by an Ohio vehicle driven by Avengelina Stoner, an Ohio resident, on March 14, 1975. The parties have stipulated that Delbert St. Bernard sustained injuries above the no-fault tort threshold and in excess of $40,000. Susan St. Bernard's claim is derivative from her husband's injuries. The Stoner vehicle, in accordance with Ohio law, had bodily injury liability insurance coverage for up to $12,500. Plaintiffs settled with Stoner's

insurer for her policy limit and with their own no-fault insurer for $7,500. This latter settlement was in lieu of contesting whether the uninsured motorist coverage under the St. Bernard's own policy could be "stacked". On December 12, 1978, plaintiffs sought recovery from Powell's no-fault insurer, defendant Detroit Automobile Inter-Insurance Exchange (DAIIE), based on the uninsured motorist coverage provided for in that policy. On January 4, 1979, defendant denied the claim on the ground that the Stoner vehicle did not qualify as an uninsured motor vehicle. By demand dated April 29, 1980, the St. Bernards commenced arbitration proceedings pursuant to the uninsured motorist provisions and arbitration provisions of Powell's DAIIE policy. An arbitration hearing ws held October 22, 1981. By order dated that same day, the arbitrators awarded the St. Bernards $20,000, presumably the policy limits.

Proceedings were commenced in Monroe County Circuit Court by plaintiffs' motion to confirm the arbitration award, filed October 23, 1981. In addition to the $20,000 principal sum, the motion requested an allowance for taxable costs and interest totaling $3,439.20. By its motion of November 9, 1981, defendant sought to vacate the arbitration award.

Following a hearing, the circuit court entered an order on January 28, 1982, granting plaintiffs' motion and denying defendant's motion. The circuit court's order was based on its finding that the parties had consented to arbitration of their disputes and that they had unconditionally agreed to be bound thereby.

After a subsequent motion and hearing, the circuit court entered its judgment on March 23, 1982, ordering defendant to pay $27,290: the $20,-

000 arbitration award, $140 in costs and $7,150 in interest, calculated from March 6, 1979 (approximately 60 days from the date of defendant's rejection of plaintiffs' claim) at 12 percent per annum.

On appeal, defendant argues that the arbitrators exceeded their powers by refusing to enforce a clear and unambiguous provision of the insurance contract and that, even if the arbitrators' award was properly confirmed, any interest thereon was calculable at a 5 percent rather than a 12 percent rate.

I

Judicial review of arbitrators' awards is limited. *Detroit Automobile Inter-Ins Exchange v McMillan,* 97 Mich App 687, 690; 296 NW2d 147 (1980). In general, relief from an arbitrators' decision may be had only where:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(c) The arbitrators exceeded their powers; or

"(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing as to prejudice substantially the rights of a party." GCR 1963, 769.9(1).

The standard for judicial review of arbitrators' decisions was elaborated upon by the Supreme Court in *Detroit Automobile Inter-Ins Exchange v Gavin,* 416 Mich 407; 331 NW2d 418 (1982). In *Gavin,* as in the instant case, DAIIE based its claim for review on the ground that the arbitra-

tors had exceeded their powers, GCR 1963,
769.9(1)(c), arguing that the award was contrary to
express provisions contained in the insurance pol-
icy. The *Gavin* Court said, quoting *Howe v Pa-
trons' Mutual Fire Ins Co of Michigan,* 216 Mich
560, 570; 185 NW 864 (1921):

> " '[W]here it clearly appears on the face of the award
> or the reasons for the decision as stated, being substan-
> tially a part of the award, that the arbitrators through
> an error in law have been led to a wrong conclusion,
> and that, but for such error, a substantially different
> award must have been made, the award and decision
> will be set aside.' " *Gavin, supra,* p 439.

Application of that standard to arbitration cases
involving principally or solely legal questions was
also discussed by the *Gavin* Court:

> "The character or seriousness of an error of law
> which will invite judicial action to vacate an arbitration
> award under the formula we announce today must be
> error so material or so substantial as to have governed
> the award, and but for which the award would have
> been substantially otherwise.
>
> "Reviewing courts should focus upon the materiality
> of the legal error to test whether judicial disapproval is
> warranted, and not upon the question whether the rule
> of law was so well settled, widely known, or easily
> understood that the arbitrators should have known of
> it. Arbitrators are not necessarily trained in the law
> and are men and women of varying ability and exper-
> tise.
>
> In the cases before us, the validity of the express
> contract terms was essentially a legal question. Ques-
> tions of law are not primarily or even ordinarily within
> the province of arbitration. For the most part, arbitra-
> tors are concerned with factfinding. Because a degree of
> efficiency can be attained by permitting arbitrators to
> decide legal questions, we do not expect them to refrain
> from making the attempt when required to do so by the

case. Nevertheless, just as a judge exceeds his power when he decides a case contrary to controlling principle of law, so does an arbitrator.

Thus, whether or not the *Gavin* and *Standfes [Detroit Automobile Inter-Ins Exchange v Standfest,* 96 Mich App 71; 292 NW2d 164 (1980), *rev'd* 416 Mich 407; 331 NW2d 418 (1982)] arbitration panels should have had the prescience to anticipate our decision in *Bradley [v Mid-Century Ins Co,* 409 Mich 1; 294 NW2d 141 (1980)], that unambiguous 'other insurance' clauses were valid to preclude stacking is entirely beside the point. We will modify the awards not because the rule ultimately announced in *Bradley* was obvious, inevitable, or 'clear', but because it is evident from the face of the awards that the arbitrators in those cases erred in not enforcing the anti-stacking provisons of the insurance contract, the terms of which primarily governed the controversy, and that but for such error the awards would have been substantially different." *Gavin, supra,* pp 443-444.

In the instant case, both parties acknowledged in the arbitration proceedings that here a matter of purely legal interpretation was involved. Defendant DAIIE's policy obligated it to pay when a passenger of its insured was injured because of an accident with an uninsured automobile. Defendant claims that its policy definition of "uninsured automobile" eliminated plaintiffs from coverage as a matter of law. This was because the alleged uninsured motor vehicle, the Stoner vehicle, had some "bodily injury liability insurance policy", while to be "uninsured" under the DAIIE policy the automobile had to have no such policy coverage.

Plaintiffs argued to the arbitrators that "uninsured" means the same as a matter of law as "underinsured" in this context. *Santillanes v Banks,* 86 Mich App 615; 273 NW2d 83 (1977). That case involved apparently identical policy language contained in a DAIIE policy. A passenger/

victim sought payment after an accident with an Illinois driver who had only $10,000 of coverage available. This amount satisfied the Illinois statutory requirements but not the Michigan requirement of $20,000 of coverage. This Court affirmed a declaratory judgment which held that the Illinois vehicle was "uninsured" for purposes of the policy language and that the victims were entitled to recovery under the DAIIE policy.

In the instant case, defendant argued to the arbitrators that *Santillanes* was no longer good law because the statutory requirements for inclusion of uninsured motorist coverage unless specifically rejected, MCL 500.3010; MSA 24.13010, had since been repealed and the no-fault act, with its various mandatory coverages, had since been enacted and had replaced the fault system. Arguments were also made regarding the coverage available from the Motor Vehicle Accident Claims Fund and the general former appellate rationale of stretching to find uninsured motorist coverage from any available insurer to protect the fund from too many claims.

It is clear that nothing except the legal validity of defendant's definition of an uninsured automobile was at issue at the arbitration proceedings. The determination of that issue meets and surpasses the "but for" test of *Gavin, supra.* Deciding the legal issue was deciding the case. If the contract provision allowing payment only where the other vehicle carried no bodily injury liability insurance is a valid contract provision, the arbitrators exceeded their powers in ignoring that provision and awarding plaintiffs the full $20,000 available under the insurance policy's uninsured motorists coverage.

Interpretation of this Court's opinion in *Santil-*

*lanes* is required to determine who should prevail here. At first blush, *Santillanes* might be interpreted as having continuing viability and as mandating the arbitration award which was made herein. The first issue addressed in *Santillanes* was whether the "underinsured" Illinois motor vehicle was an "uninsured automobile" under DAIIE's uninsured motorist coverage. The reasoning of *Woods v Progressive Mutual Ins Co,* 15 Mich App 335; 166 NW2d 613 (1968), was determined to be applicable so as to defeat the defendant's claim that an underinsured vehicle is not an uninsured vehicle. In *Woods,* the definition of "uninsured motor vehicle" contained in MCL 257.1102(d); MSA 9.2802(d) was utilized to establish that, unless a liability policy meeting the requirements of Michigan law was in force as to a motor vehicle, the motor vehicle was an uninsured motor vehicle.

We are of the opinion, however, that the reasoning behind *Woods,* and therefore *Santillanes,* was valid only in the context of the then-existing fault system of automobile insurance and the strong policy in favor of mandatory uninsured motorist coverage, MCL 500.3010; MSA 24.13010. At that time, it was statutorily mandated that uninsured motorist coverage be automatically included in all motor vehicle insurance policies unless the named insured rejected such coverage in writing. The Motor Vehicle Accident Claims Fund was also part of the *Woods* legal environment. The fund paid up to $20,000 for damages for which there was no insurance policy which provided coverage; and there existed a strong policy of providing uninsured motorist coverage under insurance policies wherever possible in order to limit claims against the fund.

Since the decision in *Woods,* both the fault

system and § 3010 have been replaced. The fund, however, covers the present accident since it occurred prior to January 2, 1976. *Bradley v Mid-Century Ins Co,* 409 Mich 1, 22-23; 294 NW2d 141 (1980). The question then is whether, given the statutory changes which have taken place, the broad, liberal interpretation geared toward finding coverage for uninsured motor vehicles and the public policy to that effect still exist. In an analogous situation, insurance provisions prohibiting the "stacking" of uninsured motor vehicle provisions are now permissible, although prior to the no-fault act they were held to be unenforceable. *Bradley, supra; Gavin, supra.*

As this Court noted in *Detroit Automobile Inter-Ins Exchange v Standfest, supra,* p 73, in discussing case law which had interpreted MCL 500.3010; MSA 24.13010 as requiring "stacking" of uninsured motorist coverage:

"The rationale underlying these decisions was eliminated by the repeal of the uninsured motorists statute and the passage of the Michigan no-fault act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq."*

We conclude, as did this Court in *Standfest* (and as the Supreme Court implicitly did by its disposition in *Standfest),* that the rationale upon which the *Santillanes* opinion (and the *Woods* opinion, insofar as it affected *Santillanes)* is based no longer exists with the repeal of the uninsured motorist statute, MCL 500.3010; MSA 24.13010. Under the no-fault legislation, all fundamental damages are provided for through first-party personal injury protection coverages or the assigned claims facility, MCL 500.3172; MSA 24.13172. Thus, the primary dilemma which one injured by an uninsured motorist previously faced no longer exists.

Moreover, the strong public policy for "universal" uninsured motorist coverage (as embodied in § 3010) may, very reasonably, be said to have vanished with the repeal of that statute.

The provision in the policy issued by defendant which provided uninsured motorist coverage only in the event of an accident involving a motor vehicle which carried no bodily injury liability insurance coverage was, therefore, not unenforceable, either by statute or as a matter of public policy. Since the Stoner vehicle was insured by a $12,500 bodily injury liability insurance policy, it was not an uninsured vehicle under the terms of the DAIIE insurance policy issued to Powell. The arbitrators, therefore, committed an error of law by not giving effect to the policy provision and, but for the error, a substantially different award must have been made. Under *Gavin*, then, it follows that the arbitrators exceeded their powers and that the arbitration award should have been vacated, as was requested in defendant's motion to the circuit court.

We therefore reverse the circuit court's order confirming the arbitrators' decision, grant defendant's motion to vacate the arbitrators' award, and set aside the judgment of the circuit court which ordered defendant to pay $20,000, plus costs and interest, to plaintiffs.

## II

Defendant next argues that the circuit court improperly awarded 12 percent interest on the arbitrators' award. Since we decide that the award itself must be vacated, we do not decide the second issue raised by defendant at this time.

Reversed.

Costs to defendant.