# STATE OF MICHIGAN

# COURT OF APPEALS

---

LESLEY G. MCCARTHY, formerly known as
LESLEY KEITH,

   Plaintiff-Appellee,

v

EUGENE PALLISCO,

   Defendant-Appellant.

UNPUBLISHED
October 6, 2016

No. 327647
Oakland Circuit Court
LC No. 2014-142351-CZ

---

Before:  SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right the trial court order denying his motions to vacate the arbitration awards of two arbitrators, confirming those awards, and entering both awards as judgments. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff filed the initial action against defendant in 2009. In February 2010, plaintiff and defendant entered into a Confidential Settlement Agreement and Mutual Release (Agreement) in the underlying lawsuit. The Agreement contained an arbitration provision, which provided that "any dispute or the determination of any breach arising under this Agreement shall be submitted and decided through statutory arbitration under MCL 600.5001 *et seq.*" The Agreement also provided that "[t]he prevailing party shall be entitled to the recovery of his or her reasonable costs and attorney fees, and the arbitrator's fees." Additionally, the parties agreed not to disparage or harass each other. The Agreement appointed Joel Serlin as arbitrator and provided for the appointment of a successor arbitrator if needed:

> In the event Serlin is unable or unwilling to continue to serve in his role as arbitrator, the Parties will mutually agree to Serlin's successor. If the Parties are unable to agree to a successor, then each Party will pick a successor, and the two successors shall mutually pick a third successor who shall then be the sole acting successor arbitrator to Serlin.

Plaintiff filed a claim for arbitration under the Agreement on July 19, 2010. Defendant filed his first arbitration claim on October 29, 2010. Over the next four years, the parties

-1-

engaged in what Serlin described as among the most highly contentious proceedings over which he had ever presided. The parties submitted over 100 pleadings, motions, responses, and replies to Serlin, and Serlin issued 28 separate decisions. Serlin noted that matters were complicated by defendant having changed his legal representation five times, and by defendant having filed a lawsuit regarding a matter that was already before the arbitrator, which he then refused to dismiss on the arbitrator's order.

Defendant filed his first motion to disqualify Serlin on July 10, 2013, which Serlin denied. The two-day arbitration hearing was held on July 22 and July 23, 2013. Serlin issued his decision on November 18, 2013. Serlin concluded that plaintiff did not breach the Agreement and that defendant did not default on his payment obligations under the Agreement, but that defendant "materially breached [the Settlement Agreement] by engaging in a concerted course of vexatious and harassing conduct directed toward Plaintiff." Serlin also concluded that plaintiff was the prevailing party. Serlin's award also clearly states that any claims not expressly granted in the award were denied with prejudice. Thus, the award fully resolved all claims that had been submitted to Serlin, except the amount of costs and fees to be awarded to plaintiff. Serlin directed plaintiff to file a claim for her costs and fees within 21 days, which she did on December 16, 2013.

On January 13, 2014, defendant filed objections to Serlin's award, in which he contended that plaintiff's request for costs and fees should be denied in its entirety. Serlin concluded that defendant was entitled to a hearing on the reasonableness of the costs and fees plaintiff claimed and granted defendant leave to conduct limited discovery in that regard. On July 21, 2014, defendant filed a second motion to disqualify Serlin. This time, defendant argued that Serlin showed bias by failing to disclose certain relationships with attorneys formerly associated with plaintiff's counsel, and by not returning certain security documents held in escrow. He further contended that Serlin had been accused of fraud or collusion in a former proceeding, although the United States Court of Appeals for the Sixth Circuit held in favor of Serlin.

On August 21, 2014, Serlin denied defendant's second motion to disqualify him, but recused himself nonetheless. While Serlin "adamantly denie[d] any bias or impropriety in the[] proceedings and [was] appalled at the deplorable tactics [defendant had] chosen to employ" in this motion, he determined that to continue as arbitrator would "risk the potential appearance that any future decisions adverse to [defendant would be] predicated on emotion and not the facts and law."

In August 2014, and again in September 2014, plaintiff filed with the court a complaint and motion to confirm the arbitration award as a judgment. Defendant responded by filing a motion for summary disposition, after which plaintiff also sought summary disposition, asking the court to determine the amount of fees and costs to be awarded, and then to confirm Serlin's award and enter it as a judgment. On December 10, 2014, the trial court denied both motions and postponed a decision on plaintiff's motion to confirm the arbitration award as a judgment "pending decision by a successor arbitrator after an evidentiary hearing on the outstanding issue—the amount of damages (attorney's fees, arbitrator fees, and costs) for plaintiff." The court further ordered that the successor arbitrator set an evidentiary hearing on the outstanding issue by January 16, 2015. The parties appointed attorney Thomas Cranmer as successor arbitrator.

The hearing on costs and fees did not take place by the court's deadline. The parties reached a stalemate when defendant insisted on arbitrating issues other than the amount of the award, and plaintiff refused to do so. Defendant filed a motion with the trial court on March 4, 2015, to compel arbitration and to modify the court's December 10, 2014 order. At that time, the arbitration hearing was scheduled for March 17, 2015. In a strongly worded opinion issued on March 16, 2015, without oral argument, the court denied defendant's motion and ordered the parties to proceed with the previously scheduled March 17, 2015 arbitration hearing. Cranmer promptly reinstated the hearing on costs and fees for March 17, 2015.

Defendant appeared at the designated time and place, but filed a motion with Cranmer for a continuance based on insufficient time to prepare and another motion to set aside Serlin's decision. Cranmer denied both motions, and the hearing on costs and fees took place that day. During the hearing, defendant argued again that plaintiff was not the prevailing party, and was not entitled to any costs or fees, and, alternatively, that any award should be *de minimis* because plaintiff's evidence was unreliable and the amount sought was excessive.

Cranmer independently determined that plaintiff was the prevailing party, as Serlin had expressly held. Additionally, he held that the fees of two of plaintiff's attorneys were reasonable under the governing caselaw regarding hourly rate and total hours worked. He disallowed all additional hours because most of them were billed by Daniel McCarthy, who had been prohibited by Serlin on June 23, 2011, from working on the case.[1] Cranmer awarded plaintiff a total of $229,956.90, which the court then confirmed and entered as a judgment. This appeal followed.[2]

## II. ANALYSIS

### A. STANDARD OF REVIEW

"A trial court's decision to enforce, vacate, or modify an arbitration award is reviewed de novo." *Nordlund & Assoc, Inc v Village of Hesperia*, 288 Mich App 222, 226; 792 NW2d 59 (2010). "[J]udicial review of an arbitration award nonetheless is extremely limited." *Fette v Peters Constr Co*, 310 Mich App 535, 541; 871 NW2d 877 (2015). A court may not review an arbitrator's findings of fact or the merits of the arbitrator's decisions. *Id*. Courts may decide

---

[1] Plaintiff is currently married to Daniel McCarthy.

[2] As a threshold matter, plaintiff argues that this Court lacks jurisdiction over this appeal because the May 11, 2015 order appealed from, among other things, denied defendant's motion for relief from a previous order *without prejudice*, and therefore was not a final order. Plaintiff contends that an order entered on June 17, 2015, which clarified earlier orders, was the final order, and that order was not timely appealed. We have considered this argument and determined that the motion for relief to which plaintiff refers did not involve an actual claim, and is, therefore, not the final order in the case. Jurisdiction attached when defendant filed his appeal on June 1, 2015, within the 21-day appeal period, and was not affected by the subsequent order issued by the trial court.

only whether arbitration awards draw their essence from the parties' agreement to arbitrate. *Id*. If the court determines that an arbitrator "did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the contract, judicial review effectively ceases." *Id*., quoting *Police Officers Ass'n of Mich v Manistee Co*, 250 Mich App 339, 343; 645 NW2d 713 (2002) (quotation marks omitted). Before the court may vacate an arbitration award, "error, if any, must be evident from the face of the award and 'so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise.' " *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991), quoting *DAIIE v Gavin*, 416 Mich 407, 443; 331 NW2d 418 (1982).

## B. LEGAL PRINCIPLES GOVERNING ARBITRATION

The rights of the parties, as well as the scope of an arbitrator's authority, are defined and limited by the parties' arbitration contract. *Gordon Sel-Way*, 438 Mich at 496. Statutory arbitration is currently governed by the Uniform Arbitration Act (UAA), MCL 691.1681 *et seq*., but these arbitration proceedings began on July 19, 2010, when the Michigan arbitration act (MAA), MCL 600.5001 *et seq*., was still in effect. Therefore, this case is governed by the MAA because the claims for arbitration were filed before the UAA went into effect on July 1, 2013. *Fette,* 310 Mich App at 542. The MAA provided that arbitrations were to be conducted in accordance with the Michigan Court Rules. *Id*.

The court rule governing arbitrations is MCR 3.602. This rule outlines the circumstances under which a court may modify, correct, or vacate an arbitration award. See *Gordon Sel-Way*, 438 Mich at 495. The grounds for invading an arbitrator's decision, however, are narrow in order to "preserve the efficiency and reliability of arbitration as an expedited, efficient, and informal means of private dispute resolution." *Id.*

MCR 3.602(J)(2) sets forth the conditions under which a court must vacate an arbitration award. That rule states:

> (2) On motion of a party, the court shall vacate an award if:
>
> (a) the award was procured by corruption, fraud, or other undue means;
>
> (b) there was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights;
>
> (c) the arbitrator exceeded his or her powers; or
>
> (d) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

## C. SERLIN'S AWARD

Defendant first argues that arbitrator Serlin failed to disclose two conflicts of interest and that his failure to do so is misconduct that evidences corruption and evident partiality in contravention of MCR 3.602(J)(2)(a) and (b). We disagree.

The rule in Michigan is that "a failure to disclose certain facts which might *reasonably* lead to an impression or appearance of bias constitutes grounds for vacating an arbitration award." *Albion Pub Sch v Albion Ed Ass'n/MEA/NEA*, 130 Mich App 698, 701; 344 NW2d 55 (1983) (emphasis added). Disclosure of information that falls outside this category is not required. *Id*. at 703.

The first alleged conflict of interest is that, shortly before the arbitration hearing, Serlin's firm hired Joseph Pia, who had practiced taxation law for the firm that represented plaintiff in the underlying lawsuit. Defendant alleges that Serlin was aware that Pia sat in on a deposition in the underlying court case and that Pia was present during at least one mediation session that Serlin conducted in that case. The second alleged conflict is that Serlin himself was represented by J. Leonard Hyman multiple times in the 1980s, and Hyman is a former, long-time partner of Norman Lippitt, plaintiff's primary counsel in this matter.

Defendant supplied affidavits stating neither he nor his former attorney would have agreed to Serlin's appointment had they known these facts. The affidavits are irrelevant, however, because the standard is not subjective. See *Albion Pub Sch*, 130 Mich App at 701. Additionally, the legal authority defendant cites does not support his position. Defendant argues that Serlin had a duty to disclose these alleged conflicts under Michigan's Uniform Arbitration Act, specifically MCL 691.1692(1) and (2). The UAA is inapplicable here. As discussed previously, this arbitration is governed by the MAA. Therefore, defendant's argument is without merit.

Defendant also argues that this case is governed by our holdings in *Albion Pub Sch* and in *Cipriano v Cipriano*, 289 Mich App 361; 808 NW2d 230 (2010). Neither case, however, is on point with the facts as they exist in this case. In *Albion Pub Sch*, this Court upheld the trial court's determination that the circumstances in that case "might reasonably give someone who is considering his services as an arbitrator the impression that he might favor one litigant over the other." *Albion Pub Sch*, 130 Mich App at 702-703. In *Albion Pub Sch*, however, the arbitrator was previously the chairman for a review committee of one of the defendants, the MEA, during the year before the arbitration hearing. *Id*. at 699-700. The arbitrator was selected by the MEA and paid for his services. *Id*. at 700. This case is distinguishable because Serlin did not engage in any activities on behalf of any of the parties in the case outside of the arbitration, and there is no indication that either party ever paid Serlin for any work outside of the arbitration proceedings in this case. See *id*.

In *Cipriano*, one party engaged in ex parte communication with the arbitrator after the arbitrator supplied excerpts of his draft opinion to both parties, and the arbitrator subsequently changed the terms of the final decision. *Cipriano*, 289 Mich App at 368-369. This Court concluded that the failure to disclose facts that "might reasonably lead to an appearance of bias" would be grounds for vacating the award, but the arbitrator acted properly in disclosing the ex parte contact, and the arbitrator was rethinking his decision at the time of the ex parte contact. *Id*. at 372. This Court further reasoned that the change "did not result in a substantial difference in the arbitration award by reason of a substantial error of law." *Id*. at 373. There is no comparison between an ex parte communication followed by a change in result and the facts here concerning Serlin's association with various attorneys over the past four decades.

-5-

We conclude that a reasonable person would not form the impression that Serlin might favor plaintiff because the deceased former partner of plaintiff's current counsel represented Serlin, especially in Serlin's capacity as receiver, in lawsuits 30 years ago. Nor would a reasonable person believe that Serlin might favor plaintiff because Serlin's firm hired—one month before the hearing was finally scheduled in this arbitration after several years of motion practice before the arbitrator—a tax and estate planning attorney who was a former partner at the firm of plaintiff's counsel. This is true even if Pia had sat in on a deposition and mediation session in the underlying lawsuit, which plaintiff denies. Serlin stated that he did not discuss the case with Pia, and, indeed, it is hard to imagine what Pia could have shared with Serlin at that late date that could possibly have influenced Serlin in any case. By the time Pia was hired into another department of Serlin's firm, Serlin had years in which to develop his own opinion of the parties and the strength of their positions. The facts in this case are so different from *Albion Pub Sch* that the earlier case provides no precedential value beyond its clear statement of the objective standard to be applied to claims of arbitrator bias. Defendant's argument that Serlin had a duty to disclose his associations with other attorneys connected with plaintiff's attorney fails. Serlin had no duty to disclose these associations because, under the facts of this case, a reasonable person would not reasonably form an impression of bias based on these associations.

Defendant next argues that Serlin acted with evident bias, contravening MCR 3.602(J)(2)(b), in several ways. "Partiality or bias which will allow a court to overturn an arbitration award must be certain and direct, not remote, uncertain or speculative." *Belen v Allstate Ins Co*, 173 Mich App 641, 645; 434 NW2d 203 (1988). The relevant court rule itself indicates that the partiality must exist in such a degree that it is readily observable or "evident." MCR 3.602(J)(2)(b).

Defendant alleges the following are instances of evident bias: (1) Serlin failed to enforce the Agreement's procedural requirements, which allowed plaintiff to litigate issues at the hearing that she had waived under the Agreement; (2) Serlin did not rule for defendant on the issue of whether plaintiff disparaged him when she told a reporter that he needed help, but instead held that the issue could be fully litigated at the arbitration hearing; (3) Serlin acted quickly when defendant filed his defamation lawsuit, ordering him to dismiss it and imposing a sanction; (4) Serlin threatened defendant with default for nonpayment of his arbitrator fees and falsely stated that plaintiff had cured her default; and (5) Serlin refused to return quit-claim deeds submitted to him to hold in escrow to secure the periodic payments defendant owed plaintiff.

All of defendant's examples of Serlin's alleged evident bias are pure speculation. First, there is no proof that Serlin disregarded the Agreement's procedural requirements, and even if he did, there is no particular reason to believe that bias was involved as opposed to some legitimate reason. Second, defendant's disagreement with Serlin's determination that the disparagement allegations should be litigated at the hearing instead of by motion provides no evidence of bias. The same is true of defendant's third allegation—that Serlin delayed the case except when plaintiff requested action, especially considering the appropriateness of quick action when one party files a lawsuit during the course of arbitration about a matter already under arbitration, as defendant did. Fourth, there is no reason to assume that Serlin's statement that plaintiff had paid her bill was motivated by bias; if indeed she had not done so, it could just as easily have been error as bias on Serlin's part. Finally, Serlin explained why he did not return to defendant the deeds defendant alleges were to serve solely as security for defendant's payment of the

-6-

settlement proceeds—the arbitration would not be over until the decision was confirmed by a court, and plaintiff had secured a lien on the property to secure payment of the final arbitration award. Serlin's explanation is no less plausible than defendant's allegation that bias motivated this decision. There is no certain or direct evidence of partiality in this case, and Serlin exhibited no evident bias. Defendant's allegations are remote, uncertain, and speculative. See *Belen*, 173 Mich App at 645. Accordingly, defendant's arguments regarding bias fail.

Defendant next argues that Serlin exceeded his authority by disregarding the Agreement's procedural rules regarding notice and a contractual limitations period, in contravention of MCR 3.602(J)(2)(c). We disagree.

"Arbitrators exceed their power when they 'act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law.' " *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004), quoting *Gavin*, 416 Mich at 434. "[A]n award will be presumed to be within the scope of the arbitrators' authority *absent express language to the contrary*." *Gordon Sel-Way*, 438 Mich at 497 (emphasis added). Our Supreme Court has explained, "[A]n allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision." *Id*.

In this case, the Agreement required a party asserting a breach to issue written notice and provide the breaching party 10 days in which to cure the breach. The party asserting the breach then had 10 days to notify the arbitrator of the breach or the right to seek relief for that breach would be waived. Defendant argues that plaintiff sometimes neglected to give him an opportunity to cure an alleged breach, and at times filed complaints with the arbitrator more than 10 days after the expiration of the cure period. Defendant further contends that Serlin stated during a teleconference that he was going to hear all claims. Defendant fails to cite specific instances of plaintiff's alleged failure to comply with the notice provision and provides no proof of any of these allegations. He simply argues, without citation to any legal authority, that because he made the allegations and plaintiff presented no evidence to the contrary at the arbitration hearing, Serlin exceeded his authority by hearing her claims.

Even assuming that the notice and cure provisions constituted material terms, and the arbitrator would have exceeded his authority if he disregarded proof that plaintiff failed to follow it, we cannot vacate Serlin's award on this basis because the alleged error is not evident from the face of the award, and defendant did not establish that it was material or substantial enough to have governed the award. To the contrary, defendant provided no proof whatsoever that plaintiff notified the arbitrator of any claim beyond the agreed-upon period. Because it is impossible to determine whether the factual allegations are true, defendant has failed to establish that Serlin exceeded his authority or that Serlin's alleged failure to enforce the contractual limitations period governed the award. Therefore, " 'the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award.' " *Saveski*, 261 Mich App at 555-556, quoting *Gavin*, 416 Mich at 429.

Defendant next argues that the trial court should have vacated Serlin's award because it contained an error of law in that plaintiff was not the prevailing party and therefore should not have been awarded costs and fees. Again, we disagree.

As discussed previously, any court's ability to review arbitration awards is very narrowly circumscribed. Courts may not review arbitrators' factual findings, review their decisions on the merits, engage in the interpretation of contracts, or substitute their judgment for the arbitrator's judgment. *City of Ann Arbor v American Federation of State, Co, & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). Reviewing courts may do no more than determine "whether the award was beyond the contractual authority of the arbitrator." *Id.* "Thus, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court may not overturn the decision even if convinced that the arbitrator committed a serious error." *Id.* (citations and quotation marks omitted).

Correctly stated, therefore, the issue is whether Serlin had the contractual authority to decide that plaintiff was the prevailing party. We conclude that he did. The Agreement required Serlin to award costs and fees to the prevailing party, which necessarily means that he was obligated to determine which party, if any, had prevailed. Serlin's authority to do so was not expressly circumscribed in the contract, either directly or by a definition of the term "prevailing party," which was not defined in the Agreement. See *Fette*, 310 Mich App at 541. It is the role of the arbitrator to interpret the parties' contract. See *Ann Arbor*, 284 Mich App at 144. Therefore, Serlin did not exceed the authority that the Agreement assigned to him in determining that plaintiff was the prevailing party. No error is "evident from the face of the award," see *Gordon Sel-Way*, 438 Mich at 497, especially in light of the fact that plaintiff was the only party who was found to have suffered a breach of the Settlement Agreement and that the successor arbitrator independently arrived at the same conclusion. Therefore, we have no authority to review this issue further and may not vacate the award on this basis.

## D. CRANMER'S AWARD

Defendant first argues that successor arbitrator Cranmer was without power to decide the attorney fee issue because the court limited his power to deciding *only* that issue. We disagree.

Contrary to defendant's argument, the court did not attempt to constrain Cranmer's authority. In its December 10, 2014 order, the court merely restated that which Serlin had already said in his award—all issues were resolved by that award except the amount of costs and fees to be awarded to plaintiff. In denying defendant's subsequent motion to compel arbitration of certain issues, the court noted that its December 10, 2014 order "does not account for any new complaints by either party and does not take a position as to whether the successor arbitrator shall address any new complaints." In light of these facts, defendant's argument that the trial court limited Cranmer's authority is without merit.

Additionally, Cranmer actually exercised his authority and did not exceed it. As Serlin could have reconsidered whether plaintiff was the prevailing party, Cranmer clearly considered whether Serlin had erred in reaching that conclusion. Cranmer independently determined that plaintiff was the prevailing party and provided the parties with his rationale for that decision:

> [T]his Arbitrator disagrees with Defendant's argument that Plaintiff was not the prevailing party in the arbitration. Arbitrator Serlin expressly found that Plaintiff was the "prevailing party" when he rendered his award. This Arbitrator is not

going to revisit that decision (absent further direction from the court), *and indeed believes that it is the correct result* as Defendant did not prevail on any of his claims of breach against Plaintiff as found by Arbitrator Serlin, while Plaintiff prevailed on her claim that Defendant had harassed her in violation of the settlement agreement. Therefore, Plaintiff improved her position through the arbitration proceedings. [Emphasis added.]

Thus, Cranmer exercised his authority in concluding that plaintiff was the prevailing party. See *Ann Arbor*, 284 Mich App at 144-145.

Defendant next argues that he was prejudiced by Cranmer's refusal to allow him to obtain the discovery to which Serlin had determined he was entitled. Again, we disagree. Cranmer clearly had the authority under the Agreement to rule on any outstanding issues, including the discovery issue. Cranmer did not make a record about this issue, but the Agreement did not require this decision to be in writing. While Serlin appears to have reduced all his decisions to writing, the Agreement contained no provision that required the successor arbitrator to follow the same process as did the original arbitrator. Because Cranmer clearly had the authority to deny discovery to defendant in connection with the decision on fees and costs, this argument also fails.

Defendant next argues that Cranmer violated MCR 3.602(J)(2)(d) by denying his request to adjourn the arbitration hearing, and that he did so because the court constrained his authority to adjourn the hearing. Again, we disagree.

In the trial court's March 16, 2015 order, the court instructed the parties "to proceed with the March 17, 2015 evidentiary hearing with Arbitrator Cranmer." That order was issued the day before that scheduled hearing, when the court unexpectedly decided defendant's motion to compel additional arbitration and modify the court's December 10, 2014 order without oral argument. Because they had been waiting for the court's decision on that motion, Cranmer and the parties had agreed to adjourn that hearing, but Cranmer rescheduled it for March 17, 2015, after he received the court's March 16, 2015 order.

Nothing on the face of Cranmer's award indicates that he took this action solely, or even in part, because of the court's order. Cranmer said only that "[t]he Request for Continuance was denied." It is just as likely that Cranmer was not convinced that defense counsel's failure to prepare was sufficient cause under MCR 3.602(J)(2)(d). This arbitration had been delayed repeatedly over four years, and, as Cranmer noted, the parties had the opportunity to submit posthearing briefs. Indeed, defendant makes no argument on appeal in support of his contention that failure to prepare was sufficient cause for adjournment. Accordingly, Cranmer's refusal to grant a continuance is not a basis for reversal.

## III. CONCLUSION

We conclude that the trial court did not err in denying defendant's motion to vacate Serlin's award, in confirming Serlin's award, or in entering his arbitration award as a judgment. We also hold that the trial court did not err in denying defendant's motion to vacate Cranmer's award, in confirming Cranmer's award, or in entering his arbitration award as a judgment.

Affirmed. As the prevailing party, plaintiff may tax costs. See MCR 7.219(A).

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly