# STATE OF MICHIGAN

# COURT OF APPEALS

LEN & JERRY'S MODULAR COMPONENTS 1, LLC,

       Plaintiff/Counter-Defendant-Appellant,

v

MIKE SCOTT and TACS AUTOMATION, LLC,

       Defendants-Counter-Plaintiffs/Third-Party Plaintiffs-Appellees,

and

GERALD VANNESTE, CREATIVE ERGONOMIC SYSTEMS, INC., and LEN & JERRY'S MODULAR COMPONENTS, LLC,

       Third-Party Defendants.

UNPUBLISHED
December 13, 2018

No. 341037
Macomb Circuit Court
LC No. 2015-001746-CB

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

      Appellant Len & Jerry's Modular Components 1, LLC (LJMC1), appeals as of right a judgment of $42,790.73 issued against it[1] and in favor of appellees Mike Scott (Scott) and Tacs Automation, LLC (Tacs).[2]  We affirm.

---

[1] The court also held the three third-party defendants (Gerald Vanneste, Creative Ergonomic Systems, Inc., and Len & Jerry's Modular Components, LLC) liable for the judgment, but they are not parties to this appeal.

[2] Scott is the principal and sole member of Tacs.

LJMC1 filed a complaint[3] against Scott and Tacs in September 2014, alleging that it provided goods and services to Tacs under a contract and that Tacs failed to pay the contract price of $6,825.00. LJMC1 sought recovery of this amount for breach of contract and also sought $10,000 for costs, interest, statutory sanctions, and attorney fees based on an "action on negotiable instrument," i.e., a check that was signed by Scott but allegedly not paid. LJMC1 also alleged conversion and additionally argued that Scott and Tacs owed it $990.00 for rent due on certain industrial property. Tacs and Scott filed a combined counter-complaint and third-party complaint, stating, in pertinent part, that Scott had been assigned various accounts but that LJMC1, as well as the third-party defendants, wrongly received the monies for these accounts. Tacs and Scott alleged embezzlement, requesting damages of $25,000, and conversion, requesting treble damages.

The case proceeded to case evaluation. The evaluation resulted in recommended awards of (1) $6,000 to LJMC1 and against Tacs and Scott and (2) $36,000 to Tacs and Scott and against LJMC1 and two of the third-party defendants.[4] The "acceptance/rejection result notice" is dated June 15, 2016; Tacs and Scott accepted the awards but LJMC1 rejected them.

Subsequently, all parties stipulated to submit the case to binding arbitration, and in October 2016, the trial court referred the case to arbitration, dismissed the matter without prejudice, but "reserve[d] jurisdiction to enter Judgment upon the award and to impose sanctions pursuant to MCR 2.403(O), if any[.]" The agreement to arbitrate stated, at paragraph 4:

> The . . . [parties] agree that this Agreement, entry of judgment and/or any judicial review of the arbitration award, shall be governed by the laws of the State of Michigan. Case Evaluation sanctions in the litigation shall be awarded by the [c]ourt based on the Judgment to be entered by the court in the litigation, pursuant to MCR 2.403, if applicable, at the time or after entry of Judgment on the arbitration award. The arbitration award shall be treated as a verdict for purposes of MCR 2.403(O). Any claim for interest, attorney fees and costs shall, if applicable, be decided by the [c]ourt of competent jurisdiction in accordance with the laws of the State of Michigan.

On January 10, 2017, the arbitrator issued an award document, stating that an arbitration hearing had been conducted on November 15 and 16, 2016. The arbitrator awarded $7,815.00 to LJMC1 and against Tacs and Scott. The arbitrator also awarded Tacs and Scott $36,015.73 against LJMC1 and the three third-party defendants.[5] The arbitrator noted, in paragraph 3 of the award document, that its awards were "inclusive of all costs, interest and attorney fees."

On January 23, 2017, Tacs and Scott filed a motion to modify or correct the arbitration awards, stating that the arbitration proceedings did not encompass case-evaluation sanctions

---

[3] The complaint was initially filed in district court but was later transferred to circuit court.

[4] Accordingly, the recommendation was for net damages of $30,000 to Tacs and Scott.

[5] Accordingly, Tacs and Scott received a net award of $28,200.73.

under MCR 2.403 and that the arbitration agreement specifically reserved the issue of attorney fees for the trial court. Accordingly, Tacs and Scott requested that the court strike paragraph 3 of the award document. LJMC1 and the third-party defendants filed a response to the motion filed by Tacs and Scott, arguing that no error was apparent from the face of the award document. They claimed, in essence, that striking paragraph 3 of the award document would involve the court's "pick[ing] and choos[ing]" among the arbitrator's various decisions and that the court was not allowed to do this.

On February 24, 2017, the court ordered that paragraph 3 of the award document be stricken to the extent it might apply to case-evaluation sanctions, stating, in part:

> [I]t is unclear whether the arbitrator intended to rule on the issue of case evaluation sanctions. However, the Arbitration Agreement and Order [to arbitrate] both provide that the issue was not to be submitted to arbitration. Accordingly, the [c]ourt is convinced that MCR 2.403[] requires this [c]ourt to strike paragraph 3 of the Award, to the extent that it purports to rule on the issue of case evaluation sanctions.

On March 21, 2017, Tacs and Scott filed a motion to confirm the arbitration awards and also for case-evaluation sanctions, asserting that because the $28,200.73 net "verdict" in their favor was not "more than 10 percent below the [case] evaluation" of a net $30,000, they were entitled to case-evaluation sanctions under the wording of MCR 2.403(O)(1) and (3). They requested case-evaluation sanctions of $29,480.00. In response, LJMC1 and the third-party defendants argued that there was no way to know if the arbitration awards included amounts for assessable costs and attorney fees "for actions after the case evaluation date of May 17, 2016, such that the adjusted verdict would be an amount less than $27,000.00, only $1,200.73 less than the actual net award, which would be an improvement of 10% within the meaning of MCR 2.403(O)(3)."[6]

On April 12, 2017, the court issued an opinion and order denying, without prejudice, the motion by Tacs and Scott, stating, in pertinent part:

> [It] is unclear what portion of the Award, if any, corresponded to case evaluations, which for the reasons discussed in the February 24, 2017 Opinion and Order, would have been inappropriate. Consequently, it is impossible for this [c]ourt to

---

[6] MCR 2.403(O)(3) states that

> a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

determine whether the Award should be confirmed. Moreover, without being able to determine the amount of the Award that remains once the amount related to case evaluation sanctions, in any, is removed, this [c]ourt is unable to decide whether [Tacs and Scott] are entitled to case evaluation sanctions under 2.403(O). As a result, [the] motion must be denied until such time as they are able to obtain clarification for the arbitrator with respect to the Award. [Underlining omitted.]

On May 25, 2017, Tacs and Scott filed a motion for entry of judgment, indicating that they had sent the court's earlier order to the arbitrator. Tacs and Scott attached to their motion the arbitrator's "Clarification and Correction of January 10, 2017 Award of Arbitrator." In this document, the arbitrator reiterated the $7,815.00 award to LJMC1 and against Tacs and Scott. The arbitrator also then awarded Tacs and Scott $27,325.88 against LJMC1 and the three third-party defendants. This differed from the $36,015.73 awarded earlier. The arbitrator explained the $8,689.85 difference by indicating that, in the earlier amount, he had erroneously included $8,279.85 in interest and $410 due to a mathematical error.[7] In finding that the award of interest was "unauthorized," the arbitrator specifically and clearly relied on the following sentence from paragraph 4 of the arbitration agreement: "Any claim for interest, attorney fees and costs shall, if applicable, be decided by the [c]ourt of competent jurisdiction in accordance with the laws of the State of Michigan." In deducting the $8,279.85 in interest, the arbitrator referred to attached notes indicating that he was taking away interest that had been calculated in connection with the underlying claims and damages requested.[8]

The arbitrator stated that the January 10 award document had not included any amount for case-evaluation sanctions and that, in fact, he had not even known the results of the case evaluation until after issuance of the awards. The arbitrator stated that the revised awards did not include any amounts for case-evaluation sanctions, interest, attorney fees, or costs. He stated that the corrected award document "supersedes the January 10, 2017 Award of Arbitrator."

Tacs and Scott argued that the "verdict" should be calculated as $27,790.73, representing the net revised award of $19,510.88 plus interest of $8,279.85. They argued that this was not more than 10% below the net case-evaluation award of $30,000 and that, therefore, they were entitled to case-evaluation sanctions. They alleged costs of $33,578.95 and requested a total judgment of $61,369.68 ($27,790.73 plus $33,578.95). LJMC1 and the third-party defendants filed a response to the motion filed by Tacs and Scott, arguing, in pertinent part, that the award to be considered in determining case-evaluation sanctions should not encompass interest and was $19,510.88, not $27,790.73. They argued, therefore, that case-evaluation sanctions were not available under MCR 2.403(O)(3).

The court issued an opinion and order on August 16, 2017. It stated that the arbitrator possessed the authority to award the interest that was in dispute and that it was clear from the award that the interest was based on debt obligations owed as part of the underlying claims and

---

[7] The parties do not take issue with the correction of the mathematical error.

[8] In other words, the "interest" was not statutory interest.

not on "statutory pre-judgment interest." The court stated that although the parties excluded "interest" from claims submitted to the arbitrator, "the [c]ourt finds it untenable that the parties intended their reference to 'interest' to include debt obligations under loans and promissory notes in the substantive part of their claims." The court further stated:

> Such a strained result would obviate the entire arbitration process and require the [c]ourt to completely reexamine the evidence submitted to the Arbitrator. It would also require the [c]ourt to substitute its own judgment as to liability for that of the Arbitrator's and reach its own findings of fact. The [c]ourt also deems the attempt to use this alleged ambiguity as a loophole to avoid an interest award altogether as unacceptable and completely without merit. Instead, the natural and plain reading of the Arbitration Agreement is that the parties intended for the Arbitrator to resolve their substantive claims, and for the [c]ourt to add in costs, interest, and sanctions, if applicable upon confirmation. This reference to interest could only logically refer to pre-[judgment] interest calculated from the total award. Therefore, despite the fact that the Arbitrator tried to assist the [c]ourt by itemizing his award, the [c]ourt reads the award together with interest and confirms the net amount of $27,790.73 . . . .

The court thus found that Tacs and Scott were entitled to case-evaluation sanctions. The court excluded from the sanctions amount (1) the billable hours spent after the issuance of the arbitrator's January 10, 2017, decision; and (2) certain amounts of billable hours that the court deemed excessive. The court awarded $15,000 for case-evaluation sanctions, for a total judgment of $42,790.73.

LJMC1 argues on appeal that the court, in deciding whether to award case-evaluation sanctions, erred by adding the $8,279.85 in interest to the net arbitration award for Tacs and Scott. "This Court reviews de novo a circuit court's decision to enforce, vacate, or modify an arbitration award." *Cipriano v Cipriano*, 289 Mich App 361, 368; 808 NW2d 230 (2010). In addition:

> Whether an arbitrator exceeded his or her authority is also reviewed de novo. A reviewing court may not review the arbitrator's findings of fact, and any error of law must be discernible on the face of the award itself. By "on its face" we mean that only a legal error that is evident without scrutiny of intermediate mental indicia will suffice to overturn an arbitration award. Courts will not engage in a review of an arbitrator's mental path leading to [the] award. Finally, in order to vacate an arbitration award, any error of law must be so substantial that, but for the error, the award would have been substantially different. [*Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (citations and some quotation marks omitted).]

LJMC1 argues that the arbitrator "had the authority to rule on the scope of his authority, because the parties agreed to the Commercial Arbitration Rules, which expressly grant the Arbitrator that authority. The arbitrator having had the authority to rule on the issue [of interest], the [c]ircuit [c]ourt did not have the authority to countermand his ruling." LJMC1 states that "[t]he error made by the [c]ircuit [c]ourt was not to recognize that Arbitrators can be wrong and

the [c]ircuit [c]ourt does not have the power to correct all errors just because they are convenient to correct." Significantly, LJMC1 specifically states that its argument is "not that the Arbitrator actually lacked the jurisdiction to award interest" but rather that the court could not correct "that particular error" made by the arbitrator because MCR 3.602(K)(2) states that a modification or correction of an award shall be made if:

> (a) there is an evident miscalculation of figures or an evident mistake in the description of a person, a thing, or property referred to in the award;

> (b) the arbitrator has awarded on a matter not submitted to the arbitrator, and the award may be corrected without affecting the merits of the decision on the issues submitted; or

> (c) the award is imperfect in a matter of form, not affecting the merits of the controversy.

LJMC1 argues that none of these categories applies to the error in question.

It is true that the agreement to arbitrate stated that the parties "agree that all claims in the litigation shall be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . ." Rule 7 of the Commercial Arbitration Rules states:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

> (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award. [American Arbitration Association Commercial Arbitration Rules https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (accessed November 19, 2018).]

Rule 7(a) does indicate that the arbitrator was empowered to rule on his own jurisdiction. However, MCR 3.602(K) makes clear that decisions made by arbitrators can be corrected in some circumstances. MCR 3.602(K)(3), for example, states that if a motion to modify or correct an arbitration award is granted, "the court shall modify and correct the award to effect its intent and shall confirm the award as modified and corrected." In addition, in *Detroit Auto Inter-Ins Exchange v Gavin*, 416 Mich 407; 331 NW2d 418 (1982), the Court indicated that in statutory

-6-

arbitration such as that at issue in the present case, see *id*. at 417 (discussing statutory arbitration), substantial legal errors on the face of an award may be corrected if, but for the errors, the award would have been substantially different, *id*. at 444-445.

Here, the purported error, encompassing $8,279.85, substantially affected the award. In addition, the error was clearly apparent from the face of the award itself and required no review of the arbitrator's "mental path," see *Washington*, 283 Mich App at 672, and *Krist v Krist*, 246 Mich App 59, 67; 631 NW2d 53 (2001), because (1) the arbitrator clearly and unambiguously stated that he was deducting the $8,279.85 in interest because of the mention of "interest" in paragraph 4 of the arbitration agreement, and (2) the arbitrator clearly and unambiguously referred to attachments that showed interest in association with the underlying claims and damages requested and not the statutory interest referred to by the trial court. In other words, the *award itself* demonstrated the error at issue, which consisted of the misconstruing of the term "interest" in the arbitration agreement.

As noted, LJMC1 argues that MCR 3.602(K)(2) does not allow for correction of the error by the arbitrator in this case because the error did not fall into any of the enumerated categories allowing for correction. However, we note that a party may file a motion to modify an award *or* vacate an award, MCR 3.602(K)(4), and an award may be vacated if "the arbitrator exceeded his or her powers," MCR 3.602(J)(2)(c). An arbitrator exceeds his powers if he acts in contravention of controlling principles of law. *Detroit Auto Inter-Ins Exchange*, 416 Mich at 434. It appears that the trial court decided to treat the motion filed by Tacs and Scott partially as a motion to vacate and partially as a motion to modify.[9] A court may nullify part of an arbitration award and leave the rest intact. See *Smith v Highland Park Bd of Ed*, 83 Mich App 541, 547; 269 NW2d 216 (1978). We admit that the situation here was unusual, but given the posture of the case and the wording of the award documents, we find no error in the trial court's resolution. The arbitrator issued an initial award, then "corrected" its award, and the trial court, in essence, found that part of this "correction" should be vacated because of a clear, substantial error of law on the face of the award itself.

For its second issue on appeal, LJMC1 argues that the trial court erred by failing to consider its assertion that the arbitration awards should be vacated because of fraud. LJMC1 cites MCR 3.602(J), which states, in relevant part, that "[o]n motion of a party, the court shall vacate an award if . . . the award was procured by . . . fraud[.]" In its April 6, 2017, answer to the motion for case-evaluation sanctions filed by Tacs and Scott, LJMC1 alleged that Scott committed perjury. In support, LJMC1 referred to its own recounting of the not-transcribed arbitration proceedings and the written closing summary signed by Scott's attorney to argue that Scott falsely stated that there had been no payment to Tacs or Scott from Chrysler for a particular

---

[9] The court cited the following statement from *Krist v Krist*, 246 Mich App 59, 67; 631 NW2d 53 (2001): "A reviewing court has three options when a party challenges an arbitration award: (1) confirm the award, (2) vacate the award if obtained through fraud, duress, or other undue means, or (3) modify the award or correct errors that are apparent on the fact of the award." In essence, the court "vacated" the arbitrator's decision to delete interest from his award to Tacs and Scott.

subcontracted job. LJMC1 attached documents purporting to show that Chrysler did pay for this job.

Tacs and Scott reply that (1) LJMC1 never filed a motion to vacate based on fraud, as required by MCR 3.602(J); (2) even if the April 6, 2017, "answer" could be deemed a motion, it was not filed within the required 21-day period, see MCR 3.602(J)(3); and (3) the court did in fact rule on the argument.

In its August 16, 2017, opinion and order, the trial court stated:

> While Len & Jerry's and Mr. Vanneste stated in their answer filed April 6, 2017 that they believed Mike Scott's [sic] testified falsely to the Arbitrator, they have not filed any motion or objection consistent with MCR 3.602(J)(1) and (3), *nor shown facts to support a finding of fraud or duress.* Thus, the [c]ourt finds no basis to vacate the Arbitrator's Award for fraud. [Emphasis added.]

The trial court *did* in fact rule upon the "motion," and therefore the entire basis of LJMC1's appellate argument is faulty.[10] Accordingly, there is no basis for appellate relief.

LJMC1 lastly argues that the trial court was not empowered to award case-evaluation sanctions because "case evaluation sanctions are not available where arbitration is employed." But LJMC1 provides no authority for this purported "rule" regarding case-evaluation sanctions and instead merely cites cases standing for the general proposition that parties to statutory arbitration cannot agree to a role for the courts that is not allowed by statute or court rule. In other words, LJMC1 does not direct us to any authority indicating that case-evaluation sanctions are not available when arbitration is employed. A party may not simply announce a position and leave it to this Court to "discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

At any rate, LJMC1 appears to be taking issue, in particular, with the statement in the arbitration agreement that "[t]he arbitration award shall be treated as a verdict for purposes of MCR 2.403(O)." However, MCR 2.403(O)(2) states:

> For the purpose of this rule "verdict" includes,
>
> (a) a jury verdict,
>
> (b) a judgment by the court after a nonjury trial,

---

[10] LJMC1's question presented is: "Did the circuit court err by failing to considering [sic] appellee's assertion that they were entitled to vacation of the arbitration award based upon fraud?"

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

Unambiguous language in a court rule is to be enforced as written. *Grievance Administrator v Underwood*, 462 Mich 188, 194; 612 NW2d 116 (2000). Here, there was indeed a "judgment entered as a result of a ruling on a motion after rejection of the case evaluation." MCR 2.403(O)(2)(c). Accordingly, a "verdict" under the court rules was at issue, and we find no basis for reversal.

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien